

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-2005

# Fasold v. Justice

Precedential or Non-Precedential: Precedential

Docket No. 04-2363

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Fasold v. Justice" (2005). *2005 Decisions.* Paper 931.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/931

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2363

———

ROBERT FASOLD,
Appellant

v.

EDMUND JUSTICE, County Chief of Detectives;
OSCAR VANCE, County Chief of Detectives;
OFFICE OF DISTRICT ATTORNEY
OF MONTGOMERY COUNTY;
FRANK BASON, Lieutenant County Detectives;
COUNTY OF MONTGOMERY

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 02-cv-09187)
District Judge: Hon. Thomas N. O'Neill, Jr.

———

Argued February 15, 2005

Before: SLOVITER, AMBRO, and ALDISERT, Circuit Judges

(Filed June 1, 2005)

———

Walter M. Phillips, Jr.   (Argued)
Kevin J. Kotch
Hoyle, Fickler, Herschel & Mathes LLP
Philadelphia, PA 19107

    Attorneys for Appellant

Charles W. Craven      (Argued)
Marshall, Dennehey, Warner, Coleman & Goggin
Philadelphia, PA 19103-4717

      Attorney for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

      Robert Fasold, a former detective in the office of the District Attorney in Montgomery County, Pennsylvania, appeals the order of the District Court entering summary judgment against him and dismissing his complaint alleging that his termination violated the state and federal age discrimination acts. He sued his former supervisors and employer:  Deputy Chief Detective Edmund Justice, Chief Detective Oscar Vance, Lieutenant Detective Frank Bason, District Attorney Bruce Castor, the Office of the District Attorney for Montgomery County, and Montgomery County, Pennsylvania (hereinafter collectively "Defendants").

      The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367; this court has jurisdiction under 28 U.S.C. § 1291.  For the reasons set forth below, we will reverse.

**I.**

      In reviewing the grant of summary judgment, we must view "the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," here Fasold.  Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); see also In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

      Fasold was thirty-three[1] years old in 1986 when he began

---

[1] In its memorandum opinion, the District Court erroneously stated that Fasold was born September 24, 1962, when he was in

his work as a detective at the Montgomery County District Attorney's Office.[2] During his first two years with the District Attorney's Office he worked in the Major Crimes Unit; in 1988 he went to the Narcotics Unit where his primary duty was the care, performance, and handling of a drug-sniffing canine. In 1992, he was transferred back to the Major Crimes Unit where he spent the next eight years. His primary responsibility was the investigation of white collar crime.

In November 2000, Fasold was told that effective January 2, 2001, he was being transferred back to the Narcotics Unit. Fasold was uncomfortable with the proposed move because of his lack of experience in Narcotics (the drug dog aside) and his positive work experiences and evaluations in Major Crimes. Also, Fasold remembered that the detectives in Narcotics were expected to work with informants and to make undercover buys– tasks for which Fasold felt ill-suited. Fasold, who had spoken with Vance in October 2000 about coming to work early and leaving early so that he could care for his children, was also concerned about the transfer because of the irregular working hours and overtime for detectives in the Narcotics Unit.

After Fasold learned of the impending reassignment, he raised his concerns with both Justice and Vance. He also voiced his concerns to Bason, a supervisor in the Narcotics Unit. According to Fasold, during the latter conversation Bason stated: "[C]an't you see the handwriting on the wall? . . . [T]hey don't want you here anymore." App. at 85. Bason does not deny that he used the expression the "handwriting on the wall," but recalls that he used it at a later time, indicating that it was in reference to Fasold's poor performance at work. App. at 589-90. In any event, despite his protestations, Fasold's reassignment to the Narcotics Unit occurred as planned. Fasold avers that, although he obviously was not pleased with the transfer, he tried to

_____

fact born September 24, 1952.

[2] Prior to taking the job with the Montgomery County District Attorney's Office, Fasold held various law-enforcement positions with Springfield Township, Pennsylvania.

"mak[e] the best of it." App. at 85.

In May 2001, Bason approached Fasold complaining that Fasold's record since he rejoined the Narcotics Unit contained an insufficient number of investigations and arrests. Fasold responded that he believed his job was primarily that of a supervisor and that he was unaware that generating investigations and arrests were major parts of his responsibility. He further questioned Bason about why he had waited until May to approach him about this issue. Fasold maintains that Bason did not have a specific response to this query, but told him that he wanted him to work more overtime hours and noted several instances when Fasold was unavailable for overtime.[3]

During his deposition, Fasold recounted that Detective Anthony Spagnoletti, who occupied an office near to Fasold's, overheard the May 2001 conversation between Bason and Fasold. Spagnoletti then told Fasold: "[I]sn't it obvious to you that the people at the top do not want you here[?] . . . Bason is their hatchet man, and, you know, they gave you to him, and they just want you out of here." App. at 106-07.

Nonetheless, after his May 2001 meeting with Bason, Fasold worked with several prosecutors and police officers in an effort to generate investigations, cases, and arrests. Indeed, at his later deposition, Bason admitted that he noticed a "marked improvement" in Fasold's work performance after their May 2001 meeting. App. at 606. Bason also testified that he could not recall any instances where Fasold had refused any request to work overtime after the May 2001 meeting.

On December 14, 2001, Fasold was assigned to assist state and local authorities with the controlled delivery of a large box of marijuana that was being transported by law-enforcement

---

[3] During his deposition, Bason admitted that, although he had documented the instances when Fasold had been unwilling to work overtime, he had never previously documented any other detective's refusal to work extra hours.

authorities to a warehouse in Cheltenham Township, Pennsylvania where it was to be picked-up by a suspected narcotics dealer. Fasold testified at his deposition that while he was en route to the warehouse in Cheltenham he informed Bason by telephone that he might need to leave the scene early in order to tend to a family situation.

That afternoon, the delivery, pick-up, and arrest occurred as planned. Fasold maintains that sometime after the suspect had been arrested he called Bason to inform him of the events and to tell him that he was leaving. Fasold testified that Bason did not ask him for any details of the arrest, question him in regard to his leaving early, or otherwise complain about Fasold's decision to leave.[4] Bason, on the other hand, remembers Fasold's phone call but testified that he did in fact question Fasold about the arrest and took issue with his decision to leave the scene. Specifically, because Fasold was unable to tell him what type of firearm the suspect had possessed and what was contained in the packages found in the suspect's car, Bason concluded that Fasold had left the site while the investigation was still in its incipient stages. Moreover, Bason explained that the arrest was supposed to be a "learning experience" for the Cheltenham police as they had not previously participated in controlled package deliveries, and Fasold was supposed to lead them through the process. App. at 618. Bason testified that he doubted Fasold's thoroughness because after the suspect was arraigned and released, he was able to empty three safe deposit boxes that might have been located and seized by the officers if an extensive inventory had been conducted at the time of the arrest.

---

[4] Fasold also testified to his belief that the situation was under control because also present at the arrest scene were detectives from the Philadelphia Police Department, several officers from the Pennsylvania State Police, as well several local officers from Cheltenham. Furthermore, Fasold made himself available to these officers by cell phone; indeed, he did receive several phone calls from these officials regarding procedure.

On December 28, 2001, Bason summoned Fasold to his office and provided him with his annual performance review. According to Fasold, this was the first negative annual performance evaluation he had received in his fifteen-plus years with the District Attorney's Office. Fasold also contends that during the meeting Bason informed him for the first time of his belief that he had left the December 14, 2001 Cheltenham arrest too early and without his knowledge or consent.

On January 3, 2002, Fasold was called to a meeting with Vance, Justice, and Bason. At that meeting, he was asked to resign voluntarily. The supervisors cited Fasold's unsatisfactory arrest record in the Narcotics Unit, his refusal to work overtime, and his early departure from the December 14, 2001 Cheltenham arrest as grounds for the proposed resignation. Fasold refused to resign; consequently, his supervisors suspended him with pay until further notice.

Several days later, on January 7, 2002, District Attorney Castor terminated Fasold's employment. Less than a week thereafter, the District Attorney filled the vacancy with Detective Christopher Kuklentz, who was then thirty-three years old.

Following his termination, Fasold followed the Montgomery County Grievance Procedure and submitted a Grievance Form. This led to a Level I hearing on April 17, 2002; at the end of this hearing Fasold's grievance was denied. Thereafter, Fasold filed age-discrimination claims with the Federal Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

On August 20, 2002, Castor, pursuant to the Grievance Procedure, held a Level II hearing and met with, inter alia, Fasold, Vance, and Justice for the purpose of reconsidering the issue of Fasold's termination. By way of a letter dated September 11, 2002, Castor denied Fasold's grievance and upheld the termination. Notably, Castor's September 11 letter specifically mentioned the pending administrative proceedings charging age discrimination and called those allegations

6

"preposterous." App. at 530.[5]

After receiving a right-to-sue letter from the EEOC, Fasold instituted this lawsuit. His complaint contains allegations under both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq. The complaint asserts that Defendants discriminated against him on account of his age. It further avers that, in denying his grievance after his filing of an administrative action, Castor had engaged in unlawful retaliation.

After discovery was completed, the District Court granted Defendants' motion for summary judgment. The District Court applied the framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and found that Fasold had raised a prima facie case of age discrimination. The Court held, however, that Fasold had failed to present sufficient evidence to show that the Defendants' proffered legitimate, nondiscriminatory reasons for the firing were pretextual. As to the retaliation claims, the District Court ruled that Fasold had failed to establish a prima facie case of retaliation; specifically, the District Court found that Fasold had failed to establish a "causal link" between his institution of agency proceedings and the denial of his grievance. App. at 8. This timely appeal followed.

**II**.

We review the District Court's grant of summary judgment de novo, applying the same standard as did the District Court. Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.,

---

[5] Castor later testified respecting Fasold's age-discrimination claim: "I was irritated that such an allegation would be made when I knew as a fact that it was totally ridiculous, and I think that anyone who would make such an allegation, especially one under oath, is a person whose credibility is dramatically compromised." App. at 578.

7

293 F.3d 120, 125 (3d Cir. 2002). Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. Summary judgment, however, must not be granted where there is a genuine dispute about a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III.

To prevail on an intentional age discrimination claim under either the ADEA[6] or the "analogous provision" of the PHRA,[7] Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 n.5 (3d Cir. 1998), a plaintiff must show that his or her age "'actually motivated'" or "'had a determinative influence on'" the employer's adverse employment decision.

---

[6] The ADEA states, inter alia, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ." 29 U.S.C. § 623(a)(1).

[7]In pertinent part, the PHRA states:

It shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age . . . of any individual . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual . . . is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. § 955(a).

8

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).[8] A plaintiff can meet this burden (1) by presenting direct evidence of discrimination, see Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), or (2) by presenting indirect evidence of discrimination that satisfies the familiar three-step framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Fakete v. Aetna, Inc., 308 F.3d 335, 337-38 (3d Cir. 2002); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101 (3d Cir. 1997) (en banc). As mentioned above, Fasold's age discrimination claims proceeded under the McDonnell Douglas framework.[9]

Under the McDonnell Douglas paradigm, an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. See Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 n.11 (3d Cir. 2004); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003). If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered

---

[8] This court has stated "that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (citing Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996)). The PHRA provisions here at issue contain no such language; therefore, we will interpret the implicated provisions of the ADEA and PHRA as applying identically in this case and as being governed by the same set of decisional law. Fogleman, 283 F.3d at 567.

[9] Recently, the Supreme Court held that disparate impact liability is cognizable under the ADEA. Smith v. City of Jackson, __ U.S. __, 125 S. Ct. 1536 (2005). Such a theory, however, is not at issue in this case; rather, Fasold alleges that Defendants engaged in intentional discrimination.

reasons are false or pretextual. Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (per curiam). It is important to note that although "the burden of production may shift" during the McDonnell Douglas inquiry, the "'ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee].'" Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 n.3 (3d Cir. 2004) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The District Court held, and Defendants do not dispute, that Fasold established a prima facie case of age discrimination. He presented evidence that he (1) was over forty years old at the time of the adverse employment decision; (2) is qualified for the position in question; (3) suffered from an adverse employment decision; and (4) that his employer replaced him with someone sufficiently younger to permit a reasonable inference of age discrimination. See generally Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004); Anderson v. Consol. Rail Corp., 297 F.3d 242, 249 (3d Cir. 2002).[10]

In turn, Defendants proffered evidence to support several facially legitimate, nondiscriminatory reasons for the firing. Specifically, Defendants maintained that Fasold had generated insufficient cases and arrests; was unwilling to work necessary overtime hours; had abandoned the December 14, 2001 Cheltenham arrest and had otherwise abdicated and shirked his duties with respect to that event; and, on at least two occasions, had failed to submit proper leave forms.

---

[10] There is no hard-and-fast rule covering what a plaintiff must show in order to establish the McDonnell Douglas prima facie showing. Rather, "the precise elements of a plaintiff's prima facie case may vary with the particular circumstances." Waldron v. SL Indus., Inc., 56 F.3d 491, 494 n.3 (3d Cir.1995); see also Geraci v. Moody-Tottrup Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996) ("The elements of th[e] prima facie case . . . must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination.").

10

Therefore, this case, like many ADEA actions, turns on the final step of the <u>McDonnell Douglas</u> framework:  whether Fasold presented evidence sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that Defendants' proffered reasons are pretextual.

In <u>Fuentes v. Perskie</u>, 32 F.3d 759 (3d Cir. 1994), this court, in addressing the <u>McDonnell Douglas</u> requirements, stated:

> [A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by <u>either</u> (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

32 F.3d at 764.[11]   In other words, if the aggrieved employee can raise evidence sufficient "to discredit the [employer's] proffered reasons . . . the [employee] need not also come forward with additional evidence of discrimination beyond his . . . prima facie case" in order to survive summary judgment.  <u>Id.</u>; <u>see also</u> <u>Reeves</u>, 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); <u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061, 1067 (3d Cir. 1996) (en banc) ("[A] plaintiff may survive summary judgment . . . if the plaintiff produced sufficient evidence to raise a genuine issue of fact as to whether the

---

[11] However, the <u>Fuentes</u> court further noted that in order "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  32 F.3d at 765.

employer's proffered reasons were not its true reasons for the challenged employment action."). After reviewing the record, we conclude that Fasold has presented evidence from which a reasonable factfinder could choose to disbelieve Defendants' proffered legitimate, nondiscriminatory reasons.

First, although Defendants contend that they fired Fasold at least in part because he had generated insufficient numbers of arrests and investigations since rejoining the Narcotics Unit, Bason–Fasold's supervisor in the Narcotics Unit–testified that Fasold's performance after their May 2001 meeting was "making [him] happy." App. at 628. He further testified that although Fasold's performance after the May 2001 meeting was "still lagging" somewhat behind other detectives, he was more-or-less satisfied with Fasold's ability to generate cases and arrests. App. at 629. In fact, he noted a "marked improvement" in Fasold's performance after the May meeting. App. at 606. The evidence that Fasold's direct supervisor was basically satisfied with the number of arrests and investigations generated by Fasold tends to undermine the validity of Defendants' contention that they fired Fasold because he generated insufficient arrests and investigations. A reasonable factfinder could conclude that Defendants' assertion that they fired Fasold because of his insufficient levels of arrests and investigations is an averment "unworthy of credence." Fuentes, 32 F.3d at 765.

A similar outcome obtains with respect to their assertion that they fired Fasold because he was unwilling to work overtime. During his deposition, Bason conceded that detectives in his Unit routinely declined overtime shifts; he further conceded that, apart from Fasold, his office had never documented such refusals let alone reprimanded detectives for refusing overtime. More important, Bason testified that he could not recall any occasion after his May 2001 meeting with Fasold where Fasold had refused to work overtime. The fact that Bason (or for that matter any other of the Defendants) could not recall any instances wherein Fasold refused overtime after May 2001 is particularly telling considering that Fasold was not fired until January 2002. Thus, a reasonable factfinder could choose to discredit the Defendants' assertion that they fired Fasold, at least

in part, due to his refusal to work overtime.

Although Defendants argue that they terminated Fasold due in large part to his behavior during the December 14, 2001, Cheltenham controlled narcotics delivery and arrest, the circumstances surrounding that occurrence are rife with disputed issues of material fact. Specifically, material disputes of fact exist respecting whether Fasold had received Bason's pre-event approval to leave the scene early, the content of the later conversation wherein Fasold informed Bason that he was leaving the scene early, and whether Bason objected when Fasold told him that he was leaving the scene early. If these disputes of fact are resolved in Fasold's favor (a permissible outcome on the state of the record), a reasonable factfinder could conclude that Defendants' assertion that they fired Fasold because of his December 14, 2001 actions at Cheltenham is merely a post hoc fabrication created to provide cover for an unlawful firing.

Finally, we conclude that Fasold raised sufficient evidence to refute Defendants' assertion that his firing was based in part on his failure to submit proper leave forms. Specifically, Fasold has presented evidence tending to show that, in the past, when detectives with the District Attorney's Office neglected to submit the proper leave forms, their superiors did not reprimand–let alone fire–them, but simply reminded the errant detectives to fill out and submit the requisite forms.

We disagree with our dissenting colleague's view of the applicable law and the facts on record. Judge Aldisert states that, under the majority's view, a plaintiff may go to trial "without any affirmative or direct evidence of discrimination whatsoever." Dissent op. at 2-3. That is not only the majority's view; it is also the view of the Supreme Court of the United States. In Reeves, the Court rejected the view of those circuits that had granted summary judgment for the employer on the ground that the terminated employee had failed to prove more than employer pretext (the "pretext plus" cases). Citing its prior decision in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993), the Court reaffirmed its holding that the factfinder's disbelief of the employer's explanation plus proof of the

13

elements of the prima facie case may be enough for the factfinder to infer the ultimate fact of discrimination. <u>Reeves</u>, 530 U.S. at 146-47. No affirmative or direct evidence of discrimination is required, a principle the dissent purportedly accepts.

Defendants proffered four reasons for Fasold's termination. We have set forth above Fasold's evidence from which the jury could find pretextual the Defendants' proffered explanations that Fasold was terminated because he generated insufficient numbers of arrests and investigations, was unwilling to work overtime, and failed to submit proper leave forms. Although the dissent essentially skips over these proffered reasons, we note that the jury's disbelief of these reasons would be enough for the jury to discredit the Defendants' explanation. <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 332-34 (3d Cir. 1995).

Instead, the dissent focuses on what it views as the central reason for Fasold's termination, his early departure from the Cheltenham investigation, which was only one of the four reasons given by Defendants for Fasold's termination. It is indisputable that summary judgment cannot be granted to the employer if there is a genuine issue of material fact. <u>Brewer</u>, 72 F.3d at 329-31. The dissent argues that Fasold has not shown a disputed issue of material fact, merely a disputed interpretation. With respect, that is not what the record shows.

As we noted earlier, Fasold testified that he had advised Defendant Bason, his supervisor, that he might need to leave early, notified Bason when he was about to leave, and received Bason's approval. Specifically, he testified that Bason replied at his first notification "ok," and asked no questions. App. at 131. After the arrest occurred and he believed that the matter was under control, he phoned Bason again, this time from the scene, and apprised him of the situation and told him he was going to leave. Bason did not object. Bason's testimony is to the contrary. He denied that he had initially given Fasold permission; instead, he testified that he told Fasold during the second phone call that he believed Fasold had left the scene too

14

early and before the work was completed.  App. at 616-18.

It is evident that this dispute, whether Fasold had permission to leave the scene, is a material issue of fact.  A jury could conclude from the conflicting testimony that Defendants' reference to Fasold's actions vis-a-vis the Cheltenham investigation as the basis for his termination was pretextual.

Moreover, the suggestion that Fasold's early departure gave the suspect the opportunity to retrieve the funds from a hidden safe deposit box to the prejudice of the prosecution is rebutted by contrary testimony in the record.  The dissent fails to acknowledge Fasold's assertion that his presence could not have changed the situation.  In the first place, when he left the scene there were experienced law enforcement officials still present, including, inter alia, a state trooper with more than six years experience investigating narcotics crimes, at least two postal inspectors, a Philadelphia detective who had been specifically assigned to a joint federal-state narcotics task force, and a detective and two officers from the Cheltenham police force.  Moreover, it was Friday evening by the time the suspect was arrested and processed.  The safe deposit keys were hidden in a pocket in a computer bag and were not discovered during the search of the car.  They were found only on the following Monday during an inventory of the seized items.  Fasold claims there was no way the investigators could have identified the bank or the branch at which the safe deposit boxes were located on Friday.  It took several days to locate and gain access to the boxes which were under a corporate name.  App. at 502-17.

We do not suggest that a trier of fact would necessarily accept Fasold's explanation, but we cannot conclude as a matter of law that if the jury does credit Fasold it would not also find that Defendants' explanation for his termination was implausible.  There is certainly enough on the record to constitute a material issue of fact between Fasold and Defendants on this issue.

In summary, Fasold's prima facie case, combined with the evidence that is capable of refuting Defendants' asserted

15

nondiscriminatory reasons, would allow (but certainly not require)[12] a factfinder to determine that Defendants fired Fasold because of his age. Reeves, 530 U.S. at 148; Sheridan, 100 F.3d at 1067. Thus, the District Court erred in granting summary judgment for Defendants on Fasold's age discrimination claims.

## IV.

The District Court also entered summary judgment in favor of Defendants on Fasold's retaliation claims. In the absence of direct evidence of retaliation, retaliation claims under both the ADEA[13] and the PHRA[14] typically proceed under the McDonnell Douglas framework. See generally Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002); cf. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278-79 (3d Cir. 2000) (analyzing retaliation claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and

---

[12] Fasold, of course, bears the ultimate burden of persuasion at trial that he was terminated because of age. See Reeves, 530 U.S. at 143; Williams, 380 F.3d at 759 n.3

[13] The anti-retaliation provision of the ADEA provides:

It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).

[14] The PHRA states in pertinent part that: "It shall be an unlawful discriminatory practice . . . [f]or any . . . employer to discriminate in any manner against any individual because . . . such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 Pa. Cons. Stat. § 955(d).

applying McDonnell Douglas framework); Mroczek v. Bethlehem Steel Corp., 126 F. Supp. 2d 379, 387 (E.D. Pa. 2001) (same).

To establish a prima facie case of proscribed retaliation under either the ADEA or the PHRA, a plaintiff must show: (1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action. Fogleman, 283 F.3d at 567-68. Here, there is no dispute that Fasold engaged in a protected employee activity in that he filed a complaint with the EEOC and the PHRC. Cf. Schmidt v. Montgomery Kone, Inc., 69 F. Supp. 2d 706, 713 (E.D. Pa. 1999) ("Defendant does not contest that filing an age discrimination charge with the EEOC and PHRC is protected employee conduct."). Moreover, Fasold was subject to an adverse employment decision–the September 11, 2002 denial of his Level II grievance. The District Court, however, held that Fasold failed to present any evidence of a "causal link" between Fasold's filing of an administrative complaint and the denial of his grievance and thus had not established a prima facie case of retaliation.

The record and the applicable law are to the contrary. At the time Fasold initiated proceedings with the EEOC and the PHRC, Defendants had already terminated him and refused to grant him any relief under the Level I grievance procedure. Thus, the only adverse employment decision to occur after Fasold's initiation of administrative action was Castor's denial of relief on the Level II grievance proceeding. Referencing this sequence of events, the District Court stated: "Defendants' decision not to rehire [Fasold] after his second grievance proceeding was merely an affirmation of [their] prior decisions which," due to their predating of Fasold's EEOC and PHRC filing, were obviously not based on his "age discrimination complaint." App. at 8. The District Court thus held that the denial of Fasold's Level II grievance was merely a reassertion of the prior decision to terminate him. The Court continued by stating that even if the Defendants considered Fasold's pending

17

claims in denying the grievance, the denial of Fasold's Level II grievance was not causally connected to Fasold's filing of the administrative claim.

We are not persuaded by the District Court's analysis. Even when an employer's underlying employment decision was not based on an impermissible ground, the employer may not deny the employee's resultant grievance because the employee had sought administrative relief under the federal or state procedure. Cf. Equal Employment Opportunity Comm'n v. Bd. of Governors of State Colls. & Univs., 957 F.2d 424, 430 (7th Cir. 1992) ("The Board may not deny grievance proceedings on the basis that employees have filed protected ADEA claims."). Thus, even if Defendants were justified in firing Fasold and denying his Level I grievance,[15] they would not be free from liability if they denied Fasold's Level II grievance because he had filed an administrative complaint.[16]

Moreover, stripped of its erroneous underlying premise, the District Court's holding that Fasold failed to present evidence of a causal connection must fall. See generally Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997) ("The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-

_____

[15] As we discussed above in Section III, the legitimacy of Defendants' underlying decisions are far from established.

[16] We further reject Defendants' assertion that the denial of Fasold's Level II grievance cannot support a retaliation claim because the Level II proceeding "was a matter of grace and not a matter of right." Br. of Appellees at 28. The Supreme Court has held that the mere fact that an employer has no obligation to provide a certain benefit does not mean that the employer is free to administer such a benefit in a discriminatory fashion. Hishon v. King & Spalding, 467 U.S. 69, 75 (1984). Thus, even if the Level II grievance proceeding was a matter of grace rather than right, Defendants are nonetheless not permitted to reject Level II grievances because of retaliatory animus. See Bd. of Governors of State Colls. & Univs., 957 F.2d at 430.

18

specific."). First, there is a "temporal proximity" between Fasold's protected act and the challenged employment decision. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 280 (3d Cir. 2000). Fasold filed his administrative claim on June 21, 2002. Castor denied Fasold's grievance on September 11, 2002, less than three months later. We have held that when only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn. <u>Kachmar</u>, 109 F.3d at 178.

Second, Castor specifically questioned Fasold regarding his pending age discrimination claims during the August 20, 2002 Level II grievance procedure and specifically mentioned Fasold's pending claims in his September 11, 2002 letter denying the grievance. Moreover, during his deposition, Castor conceded that Fasold's administrative complaint had "irritated" him and caused him to view Fasold as suspect. App. at 578. Therefore, we cannot discount the possibility that Castor's irritation with Fasold's pending administrative claims influenced the calculus Castor made in his decision to deny the Level II grievance.

We conclude that Fasold has shown evidence sufficient to support an inference by the trier of fact of a causal link between his filing of an administrative complaint (which is protected action) and Castor's denial of Fasold's Level II grievance. Consequently, we hold that the District Court erred in ruling that Fasold failed to establish a prima facie showing of retaliation for purposes of the ADEA and the PHRA. We will thus reverse the District Court's order granting summary judgment on Fasold's retaliation claims.

## V.

For the reasons set forth, we will reverse the decision of the District Court and remand for additional proceedings consistent with this opinion.

ALDISERT, <u>Circuit Judge</u>, Dissenting.

With respect, I am unable to agree with my colleagues and am compelled to dissent.

It is my view that the Majority Opinion fails to respect the cumulative experience of this Court's judiciary that defines requirements of proving pretext. In so doing, it misapplies the burden-shifting paradigm under which ADEA cases are analyzed.

Detective Fasold does not dispute <u>the facts</u> proffered by his employer, the district attorney, as its nondiscriminatory reasons for the decision to fire him. Fasold merely offers a different <u>interpretation</u> of these facts. This is not enough to establish pretext.

Under ruling case law of this Court—by panels and en banc—merely offering a different explanation for an undisputed fact is not sufficient to show that the fact was a pretext for discrimination; a denial of the fact itself is required. <u>See</u> <u>Stanziale v. Jargowsky</u>, 200 F.3d 101, 106 (3d Cir. 2000) (upholding summary judgment where the plaintiff attempted to show pretext by disputing the importance of the difference in educational qualifications between himself and the person hired rather than challenging the disparity itself or proving that the qualifications considered bore no actual relationship to the employment at issue); <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1110 (3d Cir. 1997) (en banc) (determining that summary judgment was appropriate notwithstanding the plaintiff's contention that his failure to meet or approach his goal of raising $1.5 billion in financing was due to factors beyond his control stating that "the relevant question is not whether Keller could have done better; instead, the relevant question is whether the evidence shows that it was so clear that Keller could not have done better that ORIX Credit Alliance could not have believed otherwise."); <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994) ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether

20

discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.") (citations and internal quotations omitted).

The Majority's analysis of Fasold's retaliation claim is also inadequate. In addition to failing because of a lack of proof of pretext, the retaliation claim should fail because Fasold suffered no adverse employment action subsequent to his engaging in protected activity and causation is lacking. Accordingly, I would affirm.

I.

This Court has a tradition of dismissing discrimination claims where the facts of an employer's asserted nondiscriminatory reasons for an employment decision are undisputed. Under the Majority's view, without any affirmative or direct evidence of discrimination whatsoever, a plaintiff may get to trial by offering alternative, less damaging, explanations for his or her actions without in any way disputing the historical or narrative facts offered by the employer. This approach will result in an unfortunate waste of judicial resources by diminishing the ability of district courts to use the tool of summary judgment in these types of cases. The Supreme Court shares my concern and also does not wish to "insulate an entire category of employment discrimination cases from review under Rule 50 [and, I would argue, the same concern applies to Rule 56]" or "treat discrimination differently from other ultimate questions of fact." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000) (quoting St Mary's Honor Center v. Hicks, 509 U.S. 502, 524 (1993); United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711 (1983)).

II.

The district attorney asserts that Fasold was fired because

21

of problems with his performance in the job of Narcotics Detective. He proffered evidence of Fasold's: (1) failure to generate his own case load; (2) failure to accept overtime when called upon; (3) failure to submit required leave forms; (4) leaving early from an important narcotics investigation before it was complete; and (5) a general reputation among co-workers for laziness.

Fasold countered these reasons by arguing that "his supervisor did not object to his leaving early" from the Cheltenham investigation, that he "never had a negative performance review before his transfer to the narcotics unit" and "that he ultimately rectified his failure to develop narcotics cases on his own after [the] meeting with [Frank] Bason [Fasold's immediate supervisor in the narcotics unit] clarified his job responsibilities." Fasold v. County of Montgomery, No. Civ. A. 02-9187, 2004 WL 834699, at *2 (E.D. Pa. Apr. 16, 2004). He argues also that he did not refuse any overtime requests after his meeting with Bason and that Bason's deposition shows that failure to submit required leave forms is not a large or uncommon mistake. The majority accepts Fasold's explanations as "evidence that is capable of refuting Defendants' asserted nondiscriminatory reasons." Maj. Op. at 16. I disagree.

Instead, I accept the conclusion of the District Court that Fasold's evidence "'falls short of what would be necessary to show that [the district attorney's] dissatisfaction with his performance was so clearly unfounded that it cannot have been sincere.'" Fasold, 2004 WL 834699, at *2 (citing Keller, 130 F.3d at 1110).

Evidence that Fasold improved his arrest record and his responsiveness to overtime requests after being reprimanded by Bason does not contradict Bason's testimony that, although Fasold had shown improvement, "the overall quality of work was not on par" with the other detectives.

Evidence that failure to submit required leave forms was common and not normally dealt with severely does not prevent Appellees from considering such failures in light of what they

22

perceive as a lazy, slipshod attitude.

Evidence of previous positive performance reviews does not prevent Appellees from considering the opinions of those who have expressed a negative view of Fasold's work. See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1992) ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations.").

It is conceded that the most important reason for the decision to terminate Fasold was his work on the Cheltenham investigation. And like Fasold's attempts to rebut the other proffered nondiscriminatory reasons, his attempt here fails to dispute the basic facts. The majority suggests three "disputed issues of material fact:"

> [M]aterial disputes of fact exist respecting whether Fasold had received Bason's pre-event approval to leave the scene early, the content of the later conversation wherein Fasold informed Bason that he was leaving the scene early, and whether Bason objected when Fasold told him that he was leaving the scene early.

Maj. Op. at 15-16. Simply stated these disputes are not "material facts." What is material is that Fasold left the investigation before performing his duties and that he did not have specific permission to leave before his work of inspecting and inventorying items seized during the arrest was done. This dereliction of duty standing alone is a sufficient nondiscriminatory reason for terminating Fasold's employment.

The fault was not leaving early, as the Majority characterized the employer's nondiscriminatory reason; it was failure to do a proper job before he left. And to this there was no rebuttal, nor can there be.

23

## III.

The Majority explains what <u>Fuentes</u>, <u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061 (3d Cir. 1996) (en banc), and <u>Reeves</u> make clear: that a plaintiff can survive summary judgment merely by showing that the employer's proffered nondiscriminatory reasons are pretextual and does not need additional affirmative evidence of discrimination. I do not dispute that this is the law.

My problem is with the Majority's subsequent conclusion that "Fasold has presented evidence from which a reasonable factfinder could choose to disbelieve Defendants' proffered legitimate, nondiscriminatory reasons." Maj. Op. at 14. It is the analysis that supports this conclusion that is unsupported by our cases because it allows the plaintiff to show pretext by merely offering a different explanation of the employer's proffered nondiscriminatory reasons without <u>actually disputing the central facts</u> put forward by the employer. See <u>Stanziale</u>, 200 F.3d at 106; <u>Keller</u>, 130 F.3d at 1110; <u>Fuentes</u>, 32 F.3d at 765.

Our opinion in <u>Sheridan</u> is not to the contrary. There, the plaintiff succeeded in disputing the <u>facts</u> proffered by her employer. She presented evidence, contrary to her employer's assertions, that she did not give out free drinks on the day in question and that witness testimony about her alleged violations of company policy were not credible. <u>Sheridan</u>, 100 F.3d at 1074-1075. She also presented affirmative evidence of sex discrimination by testifying that, after she had complained about sex discrimination in the decision not to consider her for the position of manager of the hotel restaurants, Amblard (her supervisor) told her that he "planned to watch her 'like a dog' and 'like a hawk.'" <u>Id.</u> at 1074. She also testified that Amblard would completely ignore her in the presence of other male supervisors and speak only to them. <u>Id.</u>

Neither is <u>Reeves</u> to the contrary. There again the dispute was over the <u>facts</u> themselves. The employer claimed to have fired Reeves "due to his failure to maintain accurate attendance

24

records," whereas Reeves "introduc[ed] evidence that he had accurately recorded the attendance and hours of the employees he supervised." <u>Reeves</u>, 530 U.S. at 133. In <u>Reeves</u> there also was abundant and uncontroverted evidence of age discrimination. In addition to rebutting the employer's stated reasons for discharging plaintiff: "Petitioner testified that [a superior] had told him that he 'was so old [he] must have come over on the Mayflower' and, on one occasion when petitioner was having difficulty starting a machine, that he 'was too damn old to do [his] job.'" <u>Id.</u> at 151. There is absolutely no comparable direct evidence here.

In these cases we should not be concerned with whether the impression Fasold's superiors formed of him was warranted by the evidence, but whether that evidence was merely a sham. <u>See</u> <u>Keller</u>, 130 F.3d at 1109 ("[H]e must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."). In <u>Fuentes</u>, we explained this tension as the difference between where an employer is shown to be "wrong or mistaken" and where the employer's story is "weak[], implausible[], inconsistent[], incoherent[], or contradictory[]." 32 F.3d at 765.

Where, as here, the basic facts of the employer's proffered legitimate reasons for the employment decision are undisputed, but the interpretation of those facts are disputed, the employer is likely to be, at most, wrong or mistaken. <u>See</u> <u>Keller</u>, 130 F.3d at 1110.

Here, there is no dispute, for example, that Fasold had refused to work overtime, or that he had failed to file required leave forms, or that his superior, Bason, had assessed his work as not up to par. With respect to the most important factor, the performance on the Cheltenham investigation, there is also no dispute. Fasold left the investigation without completing his work and without permission to leave before completing his work. Whether or not Fasold had permission to leave early is irrelevant. No factfinder could reasonably conclude that Fasold's performance in the investigation was so beyond reproach that his employer's attempt to use it as a basis for termination was

25

implausible, inconsistent, incoherent or contradictory. See Fuentes, 32 F.3d at 765.

It is the prerogative of the employer, not this Court, to determine what constitutes a breach of protocol and the consequences that follow. See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998) ("Whether sales quotas or evaluation scores are a more appropriate measure of a manager's performance is not for the court (or factfinder) to decide."); Keller, 130 F.3d at 1109 ("The question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination."); Fuentes, 32 F.3d at 765 ("[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988) (refusing to second guess an employer's determination that the plaintiff had done a poor job in completing a specific task even where the employee/plaintiff was never warned that he was failing to meet company expectations regarding the task and stating that "our inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee"); Logue v. Int'l Rehab. Assocs., Inc., 837 F.2d 150, 155 n. 5 (3d Cir. 1988) ("[O]ur task is not to assess the overall fairness of [the] . . . employer's actions.").

In an appropriate discrimination case, the trier of fact may determine that what the employer claims was a breach was not actually a breach or did not actually take place and on that basis conclude that the employer's proffered reason for an employment decision was pretextual. See Sheridan, 100 F.3d at 1074-1075. But here, it is undisputed that Fasold left the scene before the job was complete and there is no allegation that early departure from an arrest scene without completing standard police procedures is an accepted practice. Regardless of any generic approval of early departure, the DA's office could reasonably conclude that leaving the investigation before seized evidence was inspected and inventoried without specific approval was irresponsible. We should not be in the business of second guessing these types of

26

decisions. See Keller, 130 F.3d at 1109; Fuentes, 32 F.3d at 765; Healy, 860 F.2d at 1216.

I would affirm the district court's grant of summary judgment because Fasold has not produced the type of evidence of pretext we require to meet his burden of going forward under McDonnell Douglas.

IV.

I disagree with the Majority's analysis of Fasold's retaliation claims for the same reasons explained above. A retaliation claim follows the same McDonnell Douglas methodology as a basic age discrimination claim; after the plaintiff makes out a prima facie case, the employer must assert nondiscriminatory reasons for the action which the plaintiff must then show to be pretextual. Here, the nondiscriminatory reasons put forward for refusal to reinstate Fasold at a second grievance hearing are identical to the reasons for firing Fasold in the first place. As I have already explained, I view the Fasold's evidence of pretext as insufficient.

As to the retaliation claims, however, I dissent for the additional reason that, like the District Court, I would hold that Fasold failed to make out a prima facie case of retaliation. The Majority has stated the test:

> To establish a prima facie case of proscribed retaliation under either the ADEA or the PHRA, a plaintiff must show: (1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action.

Maj. Op. at 17-18 (citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-568 (3d Cir. 2002)). More recently, we have clarified part two of the test as follows: "[T]he employer took an

27

adverse <u>employment</u> action after or contemporaneous with the employee's protected activity." <u>Glanzman v. Metropolitan Management Corp.</u>, 391 F.3d 506, 515-516 (2004) (citing <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 (3d Cir. 2000) (emphasis added)). The sine qua non of retaliation is that adverse <u>employment</u> action take place. In order for adverse employment action to take place it must take place after or contemporaneous with protected activity engaged in <u>by an employee</u>. <u>Glanzman</u>, 391 F.3d at 516. The essence of protected activity is that it take place prior to the adverse employment action.

The DA's Office argues that denial of a second request for reconsideration of his firing was not an adverse employment action because Fasold was no longer an employee when he engaged in the protected activity of filing a complaint with the EEOC and the PHRC. I am inclined to agree. The decision to terminate Fasold's employment had already been made and was clearly approved by District Attorney Bruce Castor. The second grievance proceeding (the first had denied Fasold's request for reconsideration before the EEOC claim was filed) was merely a reaffirmation of a decision that had already been made and upheld in the first grievance proceeding.

The Majority supports its conclusion that an adverse result in a second post-termination grievance proceeding constitutes adverse employment action by citing <u>Equal Employment Opportunity Commission v. Board of Governors of State Colleges & Universitys</u>, 957 F.2d 424 (7th Cir. 1992). But this case stands for the proposition that an employer may not have a policy which makes the filing of an EEOC claim a bar to participation in the company's own grievance arbitration program. <u>Id.</u> at 430. There is no indication in the opinion that the plaintiffs seeking to pursue both federal and internal company remedies had already had their employment terminated.

In <u>Glanzman</u>, we held that "once her employment was terminated it was not possible for her to suffer adverse employment action" and therefore she did not make out a prima facie case of retaliation under the ADEA. 391 F.3d at 516. To be sure, in this case we have the added fact of the employer's post-

28

protected activity denial of a second request for reconsideration. I would hold that this denial was not an adverse employment action because Fasold was no longer an employee and the decision was a mere reaffirmation of one that had already been made. And I note that the Majority's ruling does no favors to the working man or woman. Subjecting adverse rulings in optional post-termination internal grievance procedures to the retaliation provision of the ADEA creates a legal climate where employers are likely to choose not to make such procedures available.

Further, I am in agreement with the District Court that causation is lacking. For the majority, it is enough that Fasold's second request for reconsideration was denied less than three months after he filed his complaint with the EEOC and that District Attorney Bruce Castor indicated his irritation with Fasold's having filed a discrimination claim. Maj. Op. at 20. The Majority points out that analysis of causation is "highly context-specific," Maj. Op. at 20 (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997)), and I find this analysis of causation totally inappropriate in the context of a second post-termination request for reconsideration.

It is quite a stretch to conclude that a denial of a second request for reconsideration was caused by anything outside of the factors that had already gone into the initial decision and evidence presented at the first grievance proceeding. This conclusion woefully overestimates the likelihood of Fasold being reinstated as a result of his second request for reconsideration.

\* \* \* \* \*

For the reasons heretofore set forth, I would affirm the judgment of the District Court. Accordingly, I respectfully dissent.

29