

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-25-2008

# Young v. Kazmenski

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2224

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Young v. Kazmenski" (2008). *2008 Decisions.* Paper 1530.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1530

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2224
_____

DANA E. YOUNG, SR.,
                                        Appellant

VS.

D.D.S. DENNIS J. KAZMERSKI; D.D.S. ROBERT MOCZULSKI
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 05-cv-02452)
District Judge:  Honorable Edwin M. Kosik
_____

Submitted under Third Circuit LAR 34.1(a)
February 7, 2008

Before:  SLOVITER, BARRY and GREENBERG, <u>Circuit Judges</u>

(Opinion filed  February 25, 2008)

_____

OPINION
_____

PER CURIAM

       Pro se appellant Dana E. Young, Sr., appeals from the District Court's March 23,

2007 grant of summary judgment in favor of appellees.  For the reasons discussed below,

we will vacate the judgment of the District Court and remand for further proceedings.

I.

Young is currently incarcerated at the State Correctional Institution at Frackville. In November 2005, he commenced an action in the Middle District of Pennsylvania under 42 U.S.C. § 1983 against Dennis Kazmerski[1] and Robert Moczulski, dentists at the State Correctional Facility in Mahanoy, where Young was formerly incarcerated. Young alleged that the defendants violated the Eighth Amendment by failing to provide him with dentures for eleven months after Dr. Kazmerski pulled all but six of his teeth. Beginning in November 2004 (two months after his teeth were pulled), Young complained that he was in pain and could not eat or sleep because his six remaining teeth—all bottom teeth—were cutting into his top gums. Dr. Kazmerski told him to check the call schedule after Thanksgiving, and that he would begin the process for fitting dentures. Young was not, however, put on the call schedule. On December 22, 2004, Young signed up for dental sick call, but was told to come back the next day because Dr. Kazmerski was out. Young was turned away the next day by Dr. Moczulski because he had to examine more serious patients. In January and in March 2005, Young submitted inmate request forms for dentures stating that he "cannot eat anything that has to be chewed because I only have 6 bottom fronts that cuts into my top gums. This causes severe soreness and swelling in my

---

[1] Kazmerski is incorrectly spelled "Kazmenski" in the District Court caption. Our clerk's office has corrected the misspelling on our docket.

2

gums." Nevertheless, Dr. Moczulski did not begin the process for making Young's dentures until April 2005. Young finally received the dentures in August 2005.

The defendants filed a motion for summary judgment arguing that although Young's recitation of events was essentially correct, Young's dental care did not violate the Eighth Amendment. The defendants argued that there was no evidence that Young's medical need was "sufficiently serious to rise to the level of an Eighth Amendment violation or to conclude that either Dr. Kazmerski or Dr. Moczulski knew of and disregarded an excessive risk to his health or safety." They asserted that although Young informed them that he could not eat "anything that has to be chewed," he never requested to be put on a soft diet, and his weight remained "stable" (he lost about 9 pounds over the eleven months). According to the defendants, Young merely suffered "some discomfort and a minor weight loss." In addition, they noted that both doctors followed protocol, and that the delay in Young's treatment was "the result of Dr. Kazmerski being called to active military duty," which left only Dr. Moczulski to treat over 1,900 inmates.

On March 23, 2007, the District Court granted the defendants' motion. The District Judge agreed that Young had not established an Eighth Amendment violation, stating that "[w]hile we question whether the failure to provide dentures was sufficient to rise to the level of a serious medical need, we do not find that the record establishes that the defendant[s] . . . exhibited deliberate indifference to plaintiff's needs." The District Judge reasoned that Young was seen by a dentist after each request and that the dentists

3

explained to him that his treatment was delayed because his condition was not an emergency. The District Judge also determined that the harm Young suffered was not significant because he failed to seek a soft food diet or lose a significant amount of weight. In addition, because the prison dentists had determined that Young was "never in any medical danger. . . [Young] failed to establish that the defendants were deliberately indifferent to a serious medical need."

Young timely appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo, viewing the underlying facts and reasonable inferences therefrom in the light most favorable to the party opposing the motion for summary judgment. Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 235 (3d Cir. 1995). Accordingly, a district court's grant of summary judgment is proper only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). For the reasons explained herein, we will vacate the District Court's grant of summary judgment and remand for further proceedings.

Deliberate indifference to a prisoner's serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To show that a prison official acted with deliberate indifference

4

to a serious medical need, the plaintiff must satisfy objective and subjective inquiries. First, the plaintiff must set forth evidence of an objectively serious medical need. See Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987). A medical need qualifies as "serious" for purposes of this analysis if, for example, "it is one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id. Additionally, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Id. (quotation and citation omitted). Second, a prison official is deliberately indifferent if he or she knows of and disregards an excessive risk to inmate health or safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Moreover, whether or not a defendant's conduct amounts to "deliberate indifference has been described as a classic issue for the fact finder." See Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir. 1998) (cited by A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 588 (3d Cir. 2004)).

Upon review of the record, we are satisfied that there is sufficient evidence to allow a reasonable jury to find that Young had a serious medical need. See Fasold v. Justice, 409 F.3d 178, 183 (3d Cir. 2005) (summary judgment standard). Dr. Kazmerski knew as early as November 2004 that Young was in pain and could not eat or sleep properly because his bottom teeth were cutting into his gums. He admitted that he told

5

Young to check the medical call out list after Thanksgiving, and that he would arrange for impressions of his mouth to be taken before he left for military duty (which was to occur in December or early January). Thus, as of November 2004, a physician had diagnosed Young as needing treatment. Young did not, however, receive treatment at that time. After Young made two unsuccessful attempts in December for further treatment, in January 2005 he made a formal request for dentures that stated that he could not "eat anything that [had] to be chewed,"[2] because his bottom teeth cut into his gums, "caus[ing] severe soreness and swelling in [his] gums." Dr. Moczulski responded that because this was "a legitimate complaint," he was "placing [Young] on [his] schedule for denture construction. Watch for the callout for [the] first appointment in a few weeks." Two months passed, and after Young's next formal request, Dr. Moczulski informed him that he would be "seen in April," and that "immediate attention is given to 'immediate problems' as in EMERGENCIES." (emphasis in original). Young had his first appointment for impressions in mid-April—five months after he first told the dentist that

---

[2]    Appellees focus on Young's failure to specifically request a soft food diet, and contend that "the inmate is instructed that if he experiences any significant pain or other problems, he may request a soft food diet." Apart from the issue of whether this is relevant to whether Young had a serious medical need or whether they were deliberately indifferent, none of the documents that they presented (including the dentists' affidavits) demonstrated that Young was given this instruction—or that he was aware that he could request such a diet. Moreover, as early as November 17, 2004, he told Dr. Kazmerski that when he tried to eat his lower teeth cut into his upper gum, and in January 2005 he submitted an inmate request stating that he "cannot eat anything that has to be chewed." These statements appear to indicate that he did, in fact, need a soft-food diet, and that he devised one by himself.

he was in pain. Viewing the record in the light most favorable to Young, we conclude that the evidence concerning Young's dental problems presented a genuine issue of material fact as to whether he had a serious medical need.

The record also leads us to hold that a jury should determine whether the appellees manifested a deliberate indifference to Young's serious medical need. See Fasold, 409 F.3d at 183. The District Judge noted that deliberate indifference can be evidenced by delayed medical care—and acknowledged that Young's dental treatment was delayed—but determined that because Young's medical need was not an emergency, and because his condition did not appear to be sufficiently harmful, the delay in treatment did not amount to deliberate indifference. However, "delayed treatment for injuries that are of a lesser degree . . . may also give rise to constitutional claims." Farrow v. West, 320 F.3d 1235, 1247 (11th Cir. 2003) (internal citations omitted). Whether the delay is tolerable depends on the nature of the need and the reason for the delay. Id.

Here, appellees' admitted reason for the delay is particularly problematic. They stated that the delay resulted from "Dr. Kazmerski being called to active military duty," because the prison then had only one dentist for an inmate population of over 1,900, "the majority of whom have significant dental problems." This is essentially an argument that understaffing and overcrowding[3] were the primary reasons that Young's treatment was

---

[3] The appellees also stated that although the prison was built to house 1,900 inmates, "[i]ts actual population is usually several hundred inmates in excess of that number."

delayed—i.e., the delay did not result from a medical judgment.[4] The Estelle test gives substantial latitude to prison medical authorities to diagnose and treat inmates patients, but "[i]mplicit in this deference to . . . is the assumption that such an informed judgment has, in fact, been made . . . . Thus, where the size of the medical staff at a prison in relation to the number of inmates having serious health problems constitutes an effective denial of access to . . . treatment by qualified health professionals, the 'deliberate indifference' standard . . . has been violated." Inmates of the Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979). See also Monmouth, 834 F.2d at 346 ("Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out.") (internal quotation and citation omitted). Of course, to the extent, if any, that Young's allegedly inadequate treatment was attributable to understaffing at SCI Mahanoy appellees cannot be liable as they were not responsible for the size of the staff and each can be held liable only for his own deliberate indifference.

Here, although the appellees may not have believed that Young's dental problems qualified as an "emergency" pursuant to the dental protocol,[5] his recognized need for

_____

[4]     Young also produced the Department of Corrections' responses to his grievances which stated that "[d]ue to the fact that one dentist was called to active military duty your denture process had to be delayed," and that "[d]ue to the military activation of one of our dentists, we were not able to attend to your issues within our usual timeframes."

[5]     According to prison dental protocols, a dental emergency (Level 4) includes treatment for: "(1) cessation of hemorrhage; (2) relief of severe pain; (3) oral infections; (4) fractures . . . ; (5) other trauma to the oral cavity or (6) any other condition . . . that

8

dentures, the serious nature of his continuing problems, the length of the delay in treatment, and the reasons for the delay, raise questions as to whether the appellees evidenced a deliberate indifference to a serious medical need. See 42 U.S.C. § 1983. Accordingly, we cannot hold as a matter of law that appellees did not violate Young's Eighth Amendment rights.

For the foregoing reasons, we will vacate the District Court's judgment entered on March 23, 2007 and remand for further proceedings.[6]

poses an immediate threat to the health of the inmate." The prison classified Young's condition under "intermediate care (Level 2)," which includes: "(1) incipient to moderate caries; (2) routine restorations; (3) asymptomatic fractured natural teeth; (4) gingivitis; (5) moderate periodontal disease; (6) missing teeth requiring replacement with removable dental prosthesis; [and] (7) non-urgent prosthetic repairs."

[6] Judge Barry would affirm the judgment of the District Court.