## FORGED CHECK OF DEPOSITOR SIGNED BY " HIS MARK."

Court of Appeals for Hamilton County.

THE PEOPLES BANK & SAVINGS COMPANY v. JON CEREGUTI
(ALSO SPELLED CEREGUT).*

Decided, March 31, 1914.

*Banks and Banking—Identification of One Who Signs by Mark—Pro Forma Witnessing of the Making of the Mark Does Not Protect the Bank Holding the Deposit.*

The burden of justifying payment of a check or draft is on the defendant bank, and where the signature is by mark and the signature card requires that a signer by mark shall be identified the identifying witness must know the man who made the mark, and an identification by one who does not know personally the man making the mark does not protect the bank paying the draft so signed.

*Cohen, Mack & Hurtig* and *Maxwell & Ramsey,* for plaintiff in error.

*Galvin & Bauer, contra.*

JONES, O. B., J.; SWING, J., and JONES. E. H., J., concur.

The defendant in error, who was plaintiff below and whose correct name is Jon Ceregut but whose name was written Jon Cereguti in the second pass book hereinafter referred to and in the original petition, brought this action against the plaintiff in error, who was defendant below, to recover from it the sum of $1,600 deposited in its savings department, which had accumulated from deposits made from time to time, no part of which had at any time been withdrawn, and also to recover the accrued interest thereon in the sum of $22.43.

The defendant below admitted that it conducted a commercial and savings bank and that the deposits were made in its savings department pursuant to certain rules and regulations among which were the following:

*Affirming *Cereguti* v. *Peoples Bank & Savings Co.,* 12 N.P.(N.S.), 159.

"4. Deposits and the interest thereon may be withdrawn by the depositor in person, or by written order, but in either case, the pass book must be presented that such payments may be entered therein.

"5. As the officers of the company may be unable to identify every depositor, the company will not be responsible for loss sustained where a depositor has not given notice of his or her book being stolen or lost, if such book be paid in whole or in part on presentation.

"6. In all cases the payment upon presentation of a deposit book shall be a discharge to the company for the amount paid."

On June 11, 1908, an account was opened by plaintiff, in the name of Jon Ceregut, who gave his address as 1979 Central avenue, and pass book 2507 containing its rules and regulations in its usual form was issued and delivered by defendant to him, and deposits were made and entered in said pass book from time to time, and interest credited thereon, and on August 11, 1909, the total credits in such pass book amounted to $1,622.43.

At the time of the making of the first deposit the depositor signed a signature card by making his X mark thereon, his name and the words "his mark" having been written on the line opposite the printed word "signature," together with a statement "to be paid when witnessed by one witness."

The rules of the company provide that the depositor by signing the signature card thereby assents to the rules and regulations of the company. While the proof fails to show that all of these rules and regulations were made known to or explained to him, he would no doubt be held to be bound by them so far as would an ordinary depositor who could read and write.

No part of this deposit was drawn out until August 11, 1909, when a draft in favor of the Capital National Bank of Indianapolis, for $1,600, purporting to be signed on its face by Jon Ceregut, his X mark, and endorsed on the back "Witness to mark G. F. Patterson," together with a collection form slip from said Capital National Bank accompanied by said pass book Number 2507, were received by the defendant, apparently in the ordinary course of business. The defendant, believing that said signature by mark, to the draft, was genuine, because it was attested by the signature of a person who was then shown in the bank di-

rectory to be the cashier of said bank, and supposing that the officer of the Capital Bank who signed as a witness to the mark had satisfied himself as to the identity of the maker of the draft, and relying upon this without further investigation, paid the draft, issuing its draft on a New York bank and sending same to said Capital National Bank. It claims that this payment was made in accordance with its rules and regulations and in the exercise of good faith and reasonable care on its part, and that it was in no way negligent in performing its duty to its depositor.

It appears that the plaintiff below was a foreigner, a native of Roumania, who was extremely illiterate, could not speak or understand English, but only Roumanian and a little German, and was unable to either read or write the German or the English language; that he was introduced at the bank at the time he made this deposit by one of its own officers named Landesco, with whom he had become acquainted, and that the initial deposit in this bank was a withdrawal from another bank. It appears that he was in the habit of keeping his pass book locked up in his trunk in the room in which he slept, which was also occupied by at least three other foreigners. It also appears that on August 5, 1909, a pass book, No. 3534, was issued by the defendant below, in the name of Jon Cereguti, in which was credited a deposit of $2; that this pass book came into the possession of plaintiff and that on December 26, 1909, a deposit of $271; and on January 10, 1910, a deposit of $30, were all credited in this book. It was not until January, 1910, that plaintiff below learned that the amounts credited to him in pass book No. 2507 had been paid out by the bank. It seems that he desired to again transfer his account from the bank of the defendant company below and deposit it in another bank with which Landesco had become associated, having left defendant's bank. Ceregut then discovered for the first time that pass book No. 3534 did not represent his entire deposit with the defendant bank and that the bank denied that it was still liable to him for the first $1,600 deposited. His testimony indicates that he thought either that he never had but one pass book and that it was the one then in his possession, pass book 3534, and that it contained all of his deposits, or else that the original book, pass book 2507, had been retained by the bank

when his deposit amounted to $1,600 and that the bank had then furnished him the second book. Ceregut's testimony was given through an interpreter and is not quite clear as to his ideas, whether he knew he had handled two books or whether he realized that the second book did not contain all the deposits made in the first and thought that for some proper reason the bank saw fit to retain the first book and allow him to continue to deposit in the second. It is clear, however, that he did not suspect or believe that his pass book showing the $1,600 credit had been stolen or lost until after he had been advised by the bank that this money had been paid out by it.

The case was tried to a jury and resulted in a verdict for the plaintiff, upon which verdict a judgment was afterwards entered by the court.

The principles of law involved in this case are laid down and decided in the case of *Hough Avenue Savings Bank Co.* v. *Andersson,* 78 O. S., 341, which is practically decisive of this case. It was there held that the fact of negligence by the bank was properly submitted to, and found by the jury. We think that is true in this case. There is no question that the money was not paid either to plaintiff or by his order, and that he was in no way responsible for its payment to another person by defendant. The law making a bank responsible for payments made by it upon forged checks or drafts is well settled in Ohio. *Dodge* v. *Nat'l Exch. Bank,* 20 O. S., 234; *Armstrong* v. *Nat'l Bank,* 46 O. S., 512.

The draft, the payment of which defendant relies upon, was signed by mark. G. F. Patterson, who witnessed the mark, admits that he made no investigation as to the identity of the man, who was simply introduced to him by a man of whom he knew nothing. The signature card containing plaintiff's mark, held by the bank, contained the express provision requiring his signature by mark to be identified by one witness. That certainly meant that the identifying witness must be one who knew the identity of the man who made the mark, otherwise there would be no security in having a witness at all.

The genuineness of the signature must be proved (*Greenleaf on Evidence,* Section 558). And one who alleges a signature by

mark has the burden of proof (*Abbott's Trial Brief,* 2d Ed., 461). Under the conditions of the deposit in this case it was essential to the validity of the signature by mark that it be witnessed by a person knowing the identity of the man signing, and a signature by mark must be proved as any other signature. 36 Cyc., 455, and cases cited.

In this case there is no question of the fact that plaintiff deposited his money in the bank, and no question of the amount. Evidently the officers of the bank relied entirely upon the action of their correspondent, the Capital Bank. If it was at fault in failing to identify the maker of the draft, the plaintiff in this case can not in any way be held responsible. The burden of justifying the payment is on the defendant. *Robinson & Sons* v. *Upton,* 12 C.C.(N.S.), 314.

In our opinion the answers made to the interrogatories, by the jury, are supported by the evidence. We find no error in the refusal by the court of the special charges relied upon by the defendant, and we do not believe that the record shows any prejudicial error in the statements made by counsel for plaintiff which are claimed by defendant to have constituted misconduct on his part.

A careful review of the record fails to show any prejudicial error, and the judgment is affirmed.