

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-19-2007

# Goodrich v. Clinton Cty Prison

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3741

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Goodrich v. Clinton Cty Prison" (2007). *2007 Decisions.* Paper 1764.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1764

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3741

_____

JERVIS LAVERN GOODRICH,

Appellant,

v.

CLINTON COUNTY PRISON; LYCOMING-CLINTON "MHMR";
LAURA LEE, employed by MHMR, contracted by Clinton County Prison
as a mental health counselor; WARDEN DURAN, at Clinton County Prison;
DEPUTY WARDEN MOTTER, at Clinton County Prison; DEBRA DUFFY,

Appellees.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(03-1469)
District Judge: Honorable Sylvia Hilda Rambo

Argued November 27, 2006

_____

Before: FUENTES and GARTH, Circuit Judges, and POLLAK, District Judge[1]

(Opinion Filed: January 19, 2007)

Carolyn F. Corwin
Jeffrey H. Lerner [Argued]
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
            *Counsel for Appellant*

_____

[1]The Honorable Louis H. Pollak, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

Joseph P. Green
Lee, Green & Reiter, Inc.
115 East High Street
P.O. Box 179
Bellefonte, PA 16823
       *Counsel for Appellees*

OPINION

_____

Garth, <u>Circuit</u> <u>Judge</u>:

On August 25, 2003, Jervis Lavern Goodrich, an inmate, filed a *pro se* civil rights complaint, pursuant to 42 U.S.C. § 1983, claiming that prison health workers and prison officials were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment to the United States Constitution. App. 24, 27. Goodrich also moved for appointment of counsel. App. 134. The defendants–Clinton County;[2] Lycoming-Clinton County Mental Health and Mental Retardation Program ("MHMR"); Clinton County Prison ("CCP") mental health counselor Lauralee Dingler;[3] CCP Warden Duran; CCP Deputy Warden Motter; and Lycoming-Clinton County MHMR Director Debra Duffy–filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. App. 65.

After Goodrich filed an opposition, the District Court ordered, on July 21, 2004, that

---

[2]In his complaint, Goodrich named Clinton County Prison as a defendant. Defendants clarified, and Goodrich agreed, that his intention was to state a cause of action against Clinton County.

[3]Goodrich initially listed this defendant as "Laura Lee." Defendants have identified her as Lauralee Dingler, an employee of Lycoming-Clinton MHMR.

2

the motion be converted into a motion for summary judgment, interpreting Goodrich's opposition to contain statements contrary to allegations in the complaint. App. 159. The District Court allowed the parties 20 days to file affidavits or supplemental documents pertinent to the summary judgment motion. Shortly after Goodrich filed such documents, the District Court denied his request for appointment of counsel. App. 16. Defendants then requested, and the District Court granted, a ten-day extension to file a supplemental brief and affidavits. App. 166, 170. On September 7, 2004, the District Court granted summary judgment to defendants (hereinafter "appellees"). App. 7. The parties took no discovery prior to the grant of summary judgment.

On September 20, 2004, Goodrich filed a timely notice of appeal, and on December 7, 2005, this Court appointed counsel for Goodrich on appeal.[4] App. 1, 6b. Goodrich contends both that the grant of summary judgment was erroneous because there were genuine issues of material fact on the issue of appellees' deliberate indifference, and that the grant of summary judgment was premature, because he was afforded no meaningful opportunity to conduct discovery. He further maintains that the grant of summary judgment should be vacated, because the District Court abused its discretion in denying his requests for appointment of counsel. Lastly, Goodrich argues that if this Court reverses or vacates the grant of summary judgment, it should order the District Court to appoint counsel on remand.

Appellees' position is that there was no error in the District Court's decision to grant

---

[4]We commend pro bono counsel for their efforts on behalf of the appellant.

3

summary judgment and no abuse of discretion in its denial of the motion to appoint counsel, but that if this Court should reverse or vacate the grant of summary judgment, this Court should not order that counsel be appointed on remand and should preclude Goodrich from arguing on remand that he suffered a "physical injury" within the meaning of the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(e). Goodrich argues that this latter issue should be left for the District Court to decide in the first instance.

For the following reasons, we will affirm the grant of summary judgment and the denial of the motion to appoint counsel.

I

Soon after arriving at CCP on September 11, 2002 on charges relating to conspiracy to manufacture methamphetamine, Goodrich requested mental health treatment. On September 19, he met with Lauralee Dingler, a Case Manager for Lycoming-Clinton County MHMR, an entity which provides mental health counseling to inmates at CCP. App. 179. Goodrich explained to Dingler that he suffered from bipolar disorder and severe depression, and told her what medications he had been taking. App. 92. She asked how he was feeling, and Goodrich informed her that he was "very depressed and . . . having rapid moodswings," making him "feel completely unstable." App. 92. Upon Dingler's request, Goodrich signed a release permitting CCP to obtain medical records from the psychiatrist who treated him prior to his incarceration. He also gave Dingler the phone number for Bradford County Prison, where he had previously been incarcerated, so that she could call "to verify that [he]

4

must receive medications while incarcerated." App. 92.

Two days later, Goodrich made a second request for medication. He also notified an unidentified prison officer that he had not yet received a response from Dingler. App. 92.

Dingler met with Goodrich again on October 9. App. 92, 179. Goodrich told her that he had been "bouncing off the walls of my cell with crazy thoughts" and "hidding [sic] from inmates and staff because I don't know how to take them and [am] worried how I might react." App. 93. Dingler told him that she had spoken with his psychiatrist, who told her that Goodrich had been self-medicating, leading the psychiatrist to discontinue Goodrich's prescriptions. App. 93, 190. Goodrich responded that he had missed doses in the past, but that it was impossible to miss doses in prison. Dingler responded that he did not need medication, and that "everyone who comes to jail suffers from some form of depression or another." App. 93. He told her that his "disorders are disabling," and that he received disability checks from the Social Security Administration because of his mental illness. App. 93. She said that she "speak[s] with the gaurds [sic] from time to time, they know what to watch for and nothings [sic] been said about you." App. 93.

A month or two later, Goodrich informed Deputy Warden Motter that "mental health is refusing to give [him] the proper medication." App. 94. When Motter instructed Goodrich to "put in a request to the doctor," Goodrich informed her that he already had, but had received "no answer." App. 94. Goodrich also said he had "put in at least 6 requests [to mental health], [but] she [Dingler] won't answer any of them, and furthermore, she doesn't

5

do her job." App. 94. Motter told Goodrich she would "check into it." App. 94.

In early 2003, Goodrich was appointed a new defense counsel in connection with his criminal case, which had been transferred from state to federal prosecution. Goodrich notified his new counsel that he had not been given medication. App. 94. In February 2003, at a hearing before Magistrate Judge Askey in connection with the criminal case, Goodrich's defense counsel informed the court that Goodrich was not being given medication for his mental illnesses. In an order dated February 26, 2003, Magistrate Judge Askey "recommend[ed] that the U.S. Marshal apprise the detaining authorities of [Goodrich's] reported history of depression and bipolar personality disorder, and ensure that appropriate care is provided." App. 103. He further "recommend[ed] that [Goodrich] be evaluated by a mental health professional and provided with any treatment recommended by that mental health professional." App. 103-04.

In response to the magistrate judge's recommendation, Dingler met with Goodrich again on March 14 and March 17, 2003. App. 94, 179. She conducted an evaluation in which she observed, *inter alia*, that Goodrich "did not appear to act in a delusional or bizzare manner nor did he display any pressured speech." App. 179. Dingler concluded that Goodrich did not "display[] clinical symptoms which would warrant a referral to the Psychiatrist for medications," and she "believed that Mr. Goodrich was displaying characteristics of 'drug seeking.'" App. 179.

Goodrich subsequently appeared before District Judge Jones in connection with his

criminal case, and expressed his frustration at his inability to obtain medication. App. 94-95. At the request of Judge Jones, Goodrich's counsel communicated with the psychiatrist who had treated Goodrich prior to his incarceration. In a letter dated April 8, 2003, the psychiatrist confirmed that he had diagnosed Goodrich as suffering from bipolar II disorder, for which "[a]ppropriate treatment would include a mood stabilizing medication in combination with an antidepressant." App. 110. On April 21, 2003, Goodrich's counsel forwarded this letter to Supervisory Deputy U.S. Marshal James Cunfer, along with a cover letter explaining that Magistrate Judge Askey had requested that "Goodrich be seen by a physician [but] [t]his was not done." App. 109.[5]

Goodrich made written requests "to see someone in mental health about medication for severe depression and bipolar disorder" on April 7, April 8, April 24, and April 28. App. 106-107. During this period, he experienced problems with the prison staff and had altercations with inmates, leading him to receive 60 days "in the hole." App. 95. He wrote to Warden Duran to "explain what was happening and tell[] him if I had my medication that mental health refuse[s] to give me, I wouldn't be in the hole or causing problems." App. 95. Duran did not respond. App. 95.

In late April or early May 2003, Goodrich was taken to see a doctor. It is not clear from the record whether this doctor was a psychiatrist. App. 161. The doctor prescribed Paxil, although Goodrich told him that Paxil would not help. App. 161.

---

[5]Actually, Magistrate Judge Askey recommended that Goodrich be seen by a "mental health professional." *See* App. 104.

7

When Goodrich told his lawyer that he had been placed on Paxil but not on mood stabilizers, his lawyer responded that "it[']s time to get you out of there, Judge Jones said we can't proceed any further with your case untill [sic] your [sic] stable enough to make a rational decisions [sic]." App. 96. A few days later, Goodrich was transferred to Snyder County Prison.

At Snyder County Prison, Goodrich underwent a mental health evaluation where he was diagnosed with attention-deficit hyperactivity disorder and bipolar disorder, and was placed on medication. App. 96.

## II

We exercise *de novo* review of a district court's grant of summary judgment. *See, e.g.*, *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005). Summary judgment is appropriate only where the moving party has shown that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "Summary judgment . . . must not be granted where there is a genuine dispute about a material fact, 'that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Fasold v. Justice*, 409 F.3d 178, 183 (3d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there exists a genuine dispute as to a material fact, we resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See, e.g.*, *Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159,

8

163 (3d Cir. 2006).

We review a district court's decision to deny appointment of counsel under 28 U.S.C. § 1915(e)(1) for abuse of discretion. *See Tabron v. Grace*, 6 F.3d 147, 158 (3d Cir. 1993).

III

Goodrich claims that the District Court erred in granting summary judgment to appellees on his § 1983 claim that appellees violated his rights under the Eighth Amendment to the United States Constitution. He argues that he presented sufficient evidence[6] from which a reasonable jury could conclude that Dingler, Duran, Motter, and Duffy were deliberately indifferent to his serious medical needs and that Clinton County and Lycoming-Clinton County MHMR had a policy or custom of denying prisoners treatment for mental illnesses.

A prison official's deliberate indifference to an inmate's serious medical needs constitutes a violation of the Eighth Amendment and states a cause of action under § 1983. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Eighth Amendment claim has objective and subjective components. First, the prisoner must show that his medical need is, objectively, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1997) (citation omitted). Second, he must establish that the prison official acted with subjective deliberate

---

[6]Goodrich argues in the alternative that to the extent he did not present sufficient evidence to survive the summary judgment motion, it was a result of the denial of his motion to appoint counsel. This argument is indistinguishable from his claim that the District Court's denial of that motion was an abuse of discretion, which we discuss and reject *infra*.

indifference, that is, that the official was aware of a substantial risk of serious harm to the prisoner but disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A medical need qualifies as "serious" for purposes of Eighth Amendment analysis if, for example, "it is one that has been diagnosed by a physician as requiring treatment." *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotation and citation omitted). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quotation and citation omitted). A mental illness may constitute a serious medical need. *Inmates of the Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979) ("Although most challenges to prison medical treatment have focused on the alleged deficiencies of medical treatment for physical ills, we perceive no reason why psychological or psychiatric care should not be held to the same standard.").

An inmate can show "deliberate indifference" where, for example, "prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering." *Lanzaro*, 834 F.2d at 346 (quotation and citation omitted). Alternatively, "deliberate indifference" is shown "where knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care" or where "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny

10

access to [a] physician capable of evaluating the need for such treatment." *Id.* at 346-47 (quotations and citations omitted). It is clear, however, that allegations of negligence do not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 106. Finally, "whether or not a defendant's conduct amounts to deliberate indifference has been described as a classic issue for the fact finder." *A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.*, 372 F.3d 572, 588 (3d Cir. 2004) (quoting *Nicini v. Morra*, 212 F.3d 798, 816 (3d Cir. 2000) (Rendell, J., dissenting)).

We are satisfied that Goodrich has presented evidence of a "serious" medical need. His mental illnesses were diagnosed by psychiatrists as requiring treatment, both prior to his incarceration at CCP and immediately after his transfer to Snyder County Prison. App. 92, 96, 110, 112-14. In addition, Goodrich provided a vivid description of his suffering during the period when he was not medicated. *See, e.g.*, App. 25, 92-93, 95 (characterizing this time as "8 months of mental torture" during which he "felt like [he] was losing control of [his] thoughts," was "very paranoid," and "completely shut down and [he] couldn't do anything about it . . . [He] just staired [sic] for days on end."). From this evidence, a reasonable fact finder could conclude that the period when he was denied medication resulted in an "unnecessary and wanton infliction of pain," thus qualifying his medical needs as "serious." *Lanzaro*, 834 F.2d at 347. *See also Pierce*, 612 F.2d at 763 (noting the possibility that "the failure to provide necessary psychological or psychiatric treatment to inmates with serious mental or emotional disturbances will result in the infliction of pain and suffering just as real

11

as would result from the failure to treat serious physical ailments").

However, the District Court was correct to conclude that appellees demonstrated that Goodrich had failed to show a genuine issue of material fact on the issue of Lauralee Dingler's "deliberate indifference." The undisputed evidence shows that after Goodrich informed Dingler of his diagnoses at their first meeting on September 19, 2002, she communicated with his pre-incarceration psychiatrist who told her that he had discontinued Goodrich's medication because Goodrich had been "self-medicating." App. 93, 109. In light of this information, Dingler told Goodrich on October 9, 2002, that she had determined that medication was unnecessary, and that Goodrich's depression was merely characteristic of someone facing a period of incarceration. App. 93. After the Magistrate Judge, on February 26, 2003, "recommend[ed] that [Goodrich] be evaluated by a mental health professional," Dingler again met with Goodrich on March 14 and March 17, 2003. App. 103-04, 94, 178-81. From these meetings, she concluded that Goodrich did not "display[] clinical symptoms which would warrant a referral to the Psychiatrist for medications" and instead, that Goodrich was "displaying characteristics of 'drug seeking.'" App. 179.

We conclude that there is no dispute about any material fact sufficient to preclude a grant of summary judgment for Dingler. There is no dispute that Dingler, upon consultation with Goodrich's physician, learned that Goodrich had abused his prescription by self-medicating. Further, there is no dispute that Dingler engaged in a good-faith clinical assessment of Goodrich's symptoms, concluding on several visits that his condition did not

warrant medication. Taken together, Dingler's consultation with Goodrich's physician and her clinical assessment of Goodrich clearly indicate an exercise of medical judgment, rather than deliberate indifference to his medical needs.

Deliberate indifference is a subjective standard, based on a defendant's state of mind: the undisputed fact that Dingler took the aforementioned steps to evaluate and treat Goodrich's mental illness precludes a finding that she wilfully ignored a substantial risk of harm. While her ultimate decision might have been negligent or erroneous, there is no indication that Dingler's mind was sufficiently culpable to constitute deliberate indifference.

IV

Next, Goodrich argues that CCP Warden Duran, CCP Deputy Warden Motter, and Lycoming-Clinton County MHMR Director Duffy were deliberately indifferent to his serious medical needs. He finds liability here under three distinct theories: (1) as supervisors of Dingler; (2) their personal involvement in denying him treatment for his mental illnesses; and (3) as policymakers responsible for establishing or maintaining the policies or customs that caused a violation of his constitutional rights.

First, while a supervisor may be personally liable under § 1983 "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations," *A.M.*, 372 F.3d at 586, as this Court has already found Goodrich's allegations insufficient to establish that

Dingler violated Goodrich's Eighth Amendment rights, these same allegations cannot establish that Dingler's supervisors violated his rights.

Secondly, as for his claim of liability based on personal involvement, none of Goodrich's submissions contain any allegations respecting Duffy, and thus summary judgment in Duffy's favor on this theory was proper. In addition, the only allegations respecting Duran and Motter were that Goodrich communicated to them that he was not getting the medication he said he needed and that Dingler was unresponsive to his requests. However, as the District Court explained, non-physician defendants cannot be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated" by the prison's medical staff. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Because the prison's medical staff, through Dingler, was providing medical consultation and evaluation, Duran and Motter cannot be considered deliberately indifferent for failing to second-guess the medical staff's appraisal of the situation.

Finally, Goodrich's claims against Duffy, Duran, and Motter based on their role as policymakers depends on the viability of Goodrich's claims against Clinton County and Lycoming-Clinton County MHMR. Goodrich argues that the District Court was in error in dismissing his claims against Clinton County and Lycoming-Clinton County MHMR because he presented sufficient evidence that Clinton County and Lycoming-Clinton County MHMR had a policy or custom of deliberate indifference to prisoners' serious mental illnesses. These

14

municipal entities may be liable based on a suit brought pursuant to § 1983 only if "the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation omitted). Here, however, Goodrich has not sufficiently alleged any constitutional transgression. Without a violation of his constitutional rights, Clinton County and Lycoming-Clinton County MHMR of course cannot be liable based on the theory that they established or maintained an unconstitutional policy or custom responsible for violating his rights. It follows, then, that Duffy, Duran, and Motter cannot be liable as policymakers.

V

Goodrich next maintains that the grant of summary judgment should be vacated because he was given no meaningful opportunity to conduct discovery. He argues that the 20 days the District Court granted the parties to submit materials pertinent to the newly-converted motion for summary judgment was an insufficient amount of time for him to engage in meaningful discovery. However, Goodrich did not raise this issue in the District Court, and although we have discretion to address issues not raised below, we do so only "when prompted by exceptional circumstances." *Tabron*, 6 F.3d at 153 n.2 (quotations and citation omitted). We find no exceptional circumstances here and decline to address this issue.

15

VI

Lastly, Goodrich argues that the District Court's denial of his motion to appoint counsel was in error. While there is no constitutional or statutory right to counsel in a civil case, *see e.g.*, *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997) (collecting cases), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Such appointment is a discretionary decision, and as such we review the District Court's denial of Goodrich's motion to appoint counsel for abuse of discretion. *Tabron*, 6 F.3d at 157-58 ("We emphasize that appointment of counsel remains a matter of discretion; section [1915(e)(1)] gives district courts broad discretion to determine whether appointment of counsel is warranted, and the determination must be made on a case-by-case basis.").

In *Tabron*, we identified a number of factors a district court should consider in determining whether to appoint counsel. First, the court should make a threshold determination of whether "the plaintiff's claim has arguable merit in fact and law." *Tabron*, 6 F.3d at 155. If the case has arguable merit, the court should proceed to consider (i) the plaintiff's ability to present his own case; (ii) the complexity of the legal issues; (iii) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (iv) the extent to which a case is likely to turn on credibility determinations; (v) whether the case will require testimony of expert witnesses; and (vi) whether the plaintiff can afford and attain counsel on his own. *See Parham*, 126 F.3d at 457-

16

58 (citing *Tabron*, 6 F.3d at 155-56, 157 n.5). This list of factors is not exhaustive.

Here, after assuming "solely for the purpose of deciding this motion, that [Goodrich's claim] has arguable merit," the District Court proceeded to find that the *Tabron* factors weighed against appointment. App. 18. The District Court explained that because Goodrich had demonstrated that he was capable of "presenting comprehensible arguments," and because the "legal issues are relatively uncomplicated," Goodrich would not "suffer prejudice if he is forced to prosecute this case on his own." App. 18.

We agree with the District Court's analysis and conclusion, and we thus hold that the District Court did not abuse its discretion here.

CONCLUSION

For the foregoing reasons, both the District Court's order granting summary judgment and the District Court's order denying the motion to appoint counsel will be affirmed.

POLLAK, District Judge, dissenting in part:

I agree with the court that the District Court's grant of summary judgment in favor of defendant-appellees Clinton County, Lycoming-Clinton County Mental Health and Mental Retardation Program (MHMR), MHMR director Debra Duffy, Clinton County Prison (CCP) Warden Duran, and CCP Deputy Warden Motter should be affirmed—although, as explained below, I come to this conclusion for reasons somewhat different from those stated by the court. *See infra* note 2. I also agree that the District Court's denial of plaintiff-appellant Jervis Goodrich's motion to appoint counsel did not constitute an abuse of discretion. *See infra* note 1. However, I respectfully dissent from the court's conclusion that the District Court's grant of summary judgment in favor of defendant-appellee Laura Lee Dingler should be affirmed. I am of the view that Goodrich, through his *pro se* efforts, has proffered enough evidence to create a genuine issue of fact as to whether Dingler acted with deliberate indifference to his serious medical needs.

The court's determination that the record reveals no evidence of deliberate indifference by Dingler rests on the court's conclusion that "Dingler's consulation with Goodrich's physician and her clinical assessment of Goodrich clearly indicate an exercise of medical judgment, rather than deliberate indifference to his medical needs." *ante* at --- --- ----.

I part ways with my colleagues because I do not perceive Goodrich's suit to be predicated on a theory that Dingler carried out a "clinical assessment" and "an exercise of medical judgment" that she knew to be markedly inadequate to meet Goodrich's serious needs. Rather, appellant's theory of liability is that, during Goodrich's several months as an inmate at CCP, Dingler—who was not a medical professional—effectively and deliberately

denied him access to medical care.

In *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979), this court observed that, when assessing a prisoner's deliberate indifference claims, "considerable latitude [should be given] to prison medical authorities" lest courts come to "second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." The court went on to explain that "[i]mplicit in this deference to prison medical authorities is the assumption that . . . an informed judgment has, in fact, been made." *Id.* But when an informed judgment has not been made—where, for example, the prison official in question does not have medical training—concerns about second-guessing professional determinations are simply not at issue. Nothing in the record suggests that Dingler had any medical training whatsoever—certainly no training of a sort qualifying her to diagnose and treat mental illness. Nor does Dingler so contend. Accordingly, Goodrich's claim should not be evaluated under the deferential standard that this court reserves for review of determinations by prison medical authorities. Rather, we should consider his claim in light of this court's observation that, when "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment, the constitutional standard of *Estelle* [*v. Gamble,* 429 U.S. 97 (1976)] has been violated." *Id.*

Goodrich has offered undisputed evidence that Dingler knew Goodrich had a

diagnosed mental illness. App. 93. In addition, the record establishes that (1) federal Magistrate Judge William H. Askey, by order dated February 25, 2003, recommended that Goodrich "be evaluated by a mental health professional and provided with any treatment recommended by that professional;" and, (2) Dingler, in March of 2003, declined to comply with that recommendation based on her own non-expert assessment that "no referral to [a] psychiatrist was warranted." *See* App. 179 (Dingler affidavit); *see also id.* at 103-04 (order of Magistrate Judge Askey); *id.* at 180 (notes from Dingler's March 17, 2003 meeting with Goodrich, mentioning "referral by federal judge").

Thus, it seems to me that Goodrich, by his own unaided efforts, has brought forward evidence on the basis of which a fact-finder could rationally conclude that, while Goodrich was an inmate at CCP, Dingler "den[ied him] access to a physician capable of evaluating the need for . . . treatment" of his "serious medical needs." *Pierce*, 612 F.2d at 763.[7] Accordingly, I would vacate the District Court's grant of summary judgment in

---

[7] I have noted that Goodrich proceeded *pro se* in developing the evidence which, in my judgment, is sufficient to defeat summary judgment in favor of Dingler. Had Goodrich been represented by counsel in the District Court, it may well be that counsel would have developed additional evidence. Nonetheless, I do not question the District Court's denial of Goodrich's motion for the appointment of counsel at the time the District Court ruled. That ruling, as my colleagues explain, was grounded in factors that properly informed the District Court's exercise of its discretionary authority. However, I take it for granted that, if my colleagues were to agree with my view that summary judgment should not have been granted in favor of Dingler, on remand for further proceedings the District Court would undertake to appoint counsel for Goodrich. *See* App. 18 (District Court order stating that Goodrich's motion for appointment of counsel "will be denied" but that "[i]n the event . . . that future proceedings demonstrate the need for counsel, the matter may be reconsidered either by the court, on its own initiative, or upon a motion properly filed by [Goodrich]").

favor of Dingler and remand this matter for further proceedings.[8]

---

[8] My agreement with the District Court's grant of summary judgment in favor of the other appellees is predicated on the fact that Goodrich has offered no evidence tending to establish that Dingler's conduct was in any significant sense affected by an act or omission of any other appellee.