NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2127
_____

DEBORAH PHILLIS,

Appellant

v.

HARRISBURG SCHOOL DISTRICT;
CHERYL BANKUS; EVANGELINE KIMBER

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 1-07-cv-01728)
District Judge:  Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2011
_____

Before:  SCIRICA, AMBRO, and VANASKIE, Circuit Judges

(Opinion filed: June 10, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

Plaintiff-appellant Deborah Phillis sued Defendants Harrisburg School District,

Cheryl Bankus, and Evangeline Kimber alleging age discrimination, retaliation, and an

1

abridgement of, *inter alia*, her First Amendment rights. The District Court granted summary judgment to the School District, and Phillis appealed. We disagree with her arguments, and thus affirm.

## I.    Background

Phillis was hired by the Harrisburg School District in 2001 and assigned to the District's high school as a learning support teacher in September 2004. There, her supervisors included then-assistant principal Bankus and then-principal Kimber.

In July 2005, Bankus evaluated Phillis's performance as unsatisfactory. Phillis grieved that evaluation with her union and filed a complaint with the Pennsylvania Human Rights Commission (PHRC).[1] The latter charged that Bankus had discriminated against Phillis based on her age, and asserted that Bankus had also shown animus toward older teachers by stating that Phillis's classroom (which was located in the basement) had a "musty but[t] smell." App. 516. Ultimately, Phillis's union grievance was successful and the evaluation was withdrawn based on the School District's failure to follow correct procedures in issuing it.

In August 2005, Kimber allegedly stated to a group of teachers, including Phillis, that "if you are no longer an effective teacher, you should pack up your excess baggage and leave," and commented that an older teacher had retired and was at home taking a "long nap." Then, in October 2005, Bankus again evaluated Phillis's performance as unsatisfactory and placed her on an "Individual Teacher Improvement Plan" (ITIP), with

---

[1] Phillis also cross-filed this complaint, as well as several subsequent PHRC complaints, with the Equal Employment Opportunity Commission (EEOC). The District Court's opinion details when these complaints were filed, and we do not repeat that history here.

the stated goal of improving her teaching skills. In January 2006, Bankus informed Phillis that she had not improved her performance as required by the ITIP. One month later, Bankus observed Phillis's classroom performance, and deemed it unsatisfactory. In April 2006, Phillis received a letter of reprimand from Bankus, which accused Phillis of violating both school policy and the requirements of the ITIP by placing class rules on a table, rather than posting them on the wall.

In June 2006, the School District identified two purported discrepancies in Phillis's application for employment with it. First, Phillis indicated on her application that the reason for leaving her previous position with the Mechanicsburg, Pennsylvania School District was that she had been a temporary employee without a long-term contract. However, she did not disclose that her short-term contract was not renewed because she received an unsatisfactory teaching evaluation. Second, Phillis also indicated that she had never been convicted of a crime, when in fact she pled guilty to driving while intoxicated in 1995.

On June 26, 2006, Phillis applied for disability retirement due to job-related stress. One month later, the School District informed Phillis that it intended to bring termination proceedings, and that a termination hearing would be held on August 11. In August, the School District suspended Phillis indefinitely and without pay, but her request for disability retirement was approved in September 2006.

In June 2007, the parties entered into a partial settlement agreement, in which Phillis agreed to release "[the] District, and its board members, directors, officers, agents, employees and attorneys, and all other persons or entities who could be said to be jointly

3

or severally liable with it," from all future claims, subject to the following exception: "[N]othing in this Agreement will serve to release the pending actions against the District listed below before the Pennsylvania Human Relations Commission, and the Equal Employment Opportunity Commission and any subsequent action in State or Federal Court arising therefrom, insofar as they seek relief other than reinstatement."

After receiving a collection of "right to sue" letters from the PHRC, Phillis filed her complaint in this case, alleging claims under the Age Discrimination in Employment Act, 29 U.S.C. § 261 *et seq.* ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and the First and Fourteenth Amendments to the United States Constitution.[2]

While the case was pending, Kimber died. Phillis did not move to substitute Kimber's estate as a defendant pursuant to Fed. R. Civ. P. 25(a), and the District Court granted defendants' subsequent motion to dismiss Kimber from the case. The Court later granted summary judgment in favor of the two remaining defendants. It concluded that, under the partial settlement agreement, Phillis unambiguously gave up her rights both to sue Bankus at all and to bring a Title VII claim against the School District.[3] Turning to Phillis's remaining claims, the District Court concluded that the ADEA is the sole available remedy for claims of age discrimination and associated retaliation, and

---

[2] Phillis also made a claim under the Pennsylvania Human Relations Act in her Complaint. However, the District Court concluded that Phillis had abandoned that claim, and she does not argue otherwise on appeal.

[3] Phillis does not appeal the District Court's conclusion regarding her Title VII claim.

dismissed Phillis's constitutional claims on that basis.[4] Then, after reviewing the summary judgment submissions at length, it held that Phillis did not successfully establish a *prima facie* case of discrimination. Additionally, it granted summary judgment to the School District concerning Phillis's ADEA retaliation claim, concluding that Phillis failed to rebut the School District's proffered non-retaliatory explanations for its actions.

Phillis now appeals both the grant of summary judgment and the order dismissing Kimber from the case following her death. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.     Analysis

We review the District Court's grant of summary judgment *de novo. Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010).[5] We also review *de novo* the District Court's legal conclusion that Fed. R. Civ. P. 25(a) required Kimber's dismissal. *See Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994). We address the District Court's conclusions in turn.

### A.     Phillis's Claims Against Kimber and Bankus

Phillis argues the District Court "could have and perhaps should have" substituted Kimber's estate into the case *sua sponte*. This is inconsistent with the plain language of Fed. R. Civ. P. 25(a), which states that, absent a motion "made within 90 days after

---

[4] She has now disavowed any equal protection claim based on age discrimination.
[5] In Phillis's opening brief, her counsel stated his belief that the "opinions of this [C]ourt . . . appear to give [district court opinions] some measure of deference." Appellant Br. at 24-25. We assure Phillis and her counsel that this is not the case.

5

service of a statement noting the death, the action by or against the decedent *must* be dismissed." (Emphasis added.) The mandatory language of this rule does not leave room for the District Court to save Phillis from her failure to file a motion for substitution.

In any event, the Court correctly concluded that the settlement agreement between Phillis and the School District released any claims against Bankus, and that conclusion would apply equally to Kimber (and Kimber's estate). "[T]he interpretation of a contract generally is a question of law" we review *de novo*. *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008). Paragraph Three of the settlement agreement specifies that Phillis "forever discharges District, and its board members, directors, officers, agents, employees and attorneys, and all other persons or entities who could be said to be jointly or severally liable with it," except for "the pending actions against the District listed below . . . and any subsequent action in State or Federal Court arising therefrom . . . ." App. 612. Notably, the release covers a wide-ranging list of individuals, whereas the exception—found in the same paragraph—includes only the District. As the District Court held, the only reasonable interpretation of that language is that it releases Phillis's claims against Bankus and Kimber, leaving only her claims against the School District.

**B.  Phillis's Age Discrimination Claim**

Phillis argues that the District Court erred by granting summary judgment on her ADEA claim, and asserts that she demonstrated the existence of a disputed material fact as to each element of her *prima facie* case. We disagree.

An ADEA plaintiff can make her *prima facie* case by putting forth direct and/or indirect evidence of discrimination. *Fasold v. Justice*, 409 F.3d 178, 183-84 (3d Cir.

6

2005). Where a plaintiff relies on indirect evidence, we follow the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Phillis points to a handful of instances that she contends provide direct or circumstantial evidence of discrimination. They are: 1) that Bankus commented that Phillis's basement classroom had a "musty but[t]" smell, and that "musty butt" is "an Ebonics term used to refer derogatorily to older people," Appellant Br. at 29; 2) that Kimber made a negative comment about "veteran" teachers; 3) that older teachers were given undesirable work assignments and storage areas; and 4) that both Phillis and another older teacher successfully grieved "unsatisfactory" evaluations in 2005. Even evaluated collectively, we hold that this evidence is insufficient to meet Phillis's initial burden.

At the outset, we note that, despite a voluminous appendix in this case, Phillis primarily relies on her own unsworn declaration in order to establish the existence of disputes of material fact. Unsworn declarations are permissible at the summary judgment stage if they conform to 28 U.S.C. § 1746's requirement that declarants state that the contents of their declarations are true, subject to penalty of perjury. Fed. R. Civ. P. 56(c); *see also Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005). Phillis's declaration does not comply with this requirement, and thus the District Court was free to disregard it.

Even considering that declaration, Phillis's evidence of age discrimination falls short. First, she provides no citation for her "proffer" that "musty butt" is an "Ebonics term used to refer derogatorily to older people," Appellant Br. at 29, and this is not the

7

sort of "fact" of which we could take judicial notice. Nor does the withdrawn 2005 evaluation, which rated as unsatisfactory Phillis's performance in maintaining personal hygiene, help Phillis's case in this regard.

Second, even drawing all inferences in Phillis's favor, Kimber's negative statements about "veteran and returning" teachers generally, and about one particular teacher (Ms. Withers), do not evidence discrimination. It is not clear from the record how old the returning teachers are; presumably many of them were significantly younger than 40, and some new teachers (like Phillis herself) were older than 40 when they started with the School District. The second statement appears to be directed at Ms. Withers's behavior, and not all teachers or even all older teachers. Likewise, Phillis's unsworn statements that she was assigned undesirable work and storage areas and that "the atmosphere was like a workhouse, with some older female teachers pushing carts full of materials great distances," App. 211, are insufficient to defeat summary judgment. These statements do not establish that similarly situated younger teachers received better treatment, and therefore do not evidence discrimination. Finally, that Phillis and another older teacher—among approximately 1,300 School District employees—received unsatisfactory evaluations, which they then successfully grieved, does not suggest age discrimination absent more information about the total number of unsatisfactory evaluations issued and the age of the teachers who received them. Nor does it help Phillis's cause that the evaluations were later withdrawn on procedural grounds.

8

Accordingly, we conclude that the District Court did not err in granting summary judgment on Phillis's discrimination claim.[6]

## C.     Phillis's Retaliation Claims.

This case involves two species of retaliation claim—one brought under the ADEA's retaliation provision, 29 U.S.C. § 623(d), and one brought under 42 U.S.C. § 1983, alleging a violation of Phillis's First Amendment rights.

The District Court concluded that the ADEA's retaliation provision preempts Phillis's First Amendment claims that defendants violated her speech and petition rights by retaliating against her for filing PHRC petitions and union grievances. As the Court acknowledged, we have not yet decided this issue. And we decline to do so today. Instead, we conclude that Phillis's constitutional claims fail because she has not demonstrated a dispute of material fact as to whether the School District may be held liable under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).[7]

In the District Court, Phillis argued that the School District demonstrated a policy of retaliation by continuing to rely on the incidents underlying the 2005 unsatisfactory evaluation even after that evaluation had been withdrawn. We do not see what this has to do with whether the School District had a policy of retaliating against teachers who file

---

[6] We note that Phillis asserts in her brief that her evidence of retaliation also serves as indirect evidence of discrimination. For the reasons stated in the following section, we conclude as well that Phillis's indirect evidence of retaliation is also insufficient.

[7] Under *Monell* and its progeny, the School District is liable under 42 U.S.C. § 1983 only if Phillis can show that a District employee "acted pursuant to a formal government policy or a standard operating procedure," that actions were taken by an individual with "policy making authority," or that "an official with authority has ratified the unconstitutional actions of a subordinate . . . ." *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

PHRC complaints or union grievances. Additionally, when asked during her deposition about "facts relating to a policy of retaliation and discrimination," Phillis stated only that she had "seen teachers who were older in what looked to me [to be] systematically experiencing constructive discharge," but could not remember the names of those teachers, except for one Ms. Pottiger (as to whom she offered no details). App. 657. That answer was insufficient to create a dispute of fact as to whether the School District had a policy or custom of retaliating against teachers, and was hopelessly vague even as to whether it had a policy of age discrimination.[8]

Finally, because Phillis has not shown the existence of a dispute of fact as to her ADEA retaliation claim, that claim also fails. To establish an ADEA retaliation claim, a plaintiff must first demonstrate a *prima facie* case, *Fasold*, 409 F.3d at 188, which the District Court concluded Phillis had done. This triggered the School District's burden to state a "legitimate non-discriminatory reason for the adverse employment action," at which time "the burden of production returns to [Phillis] to demonstrate that the employer's proffered rationale was a pretext . . . ." *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009). Because the School District does not appear to contest the

---

[8] Finally, though Phillis did not make this argument, we note that *Monell* liability could be established if the relevant actors—generally Kimber and Bankus—had "final, unreviewable discretion to make a decision or take action." *McGreevy*, 413 F.3d at 369. Pennsylvania law makes clear, however, that the relevant unreviewable discretion is vested in either the school board or the superintendant. 24 Pa. Cons. Stat. §§ 11-1123 ("no unsatisfactory rating shall be valid unless approved by the district superintendent") & 11-1127 (referring to due process procedures to which tenured teachers are entitled before they may be dismissed by the "board of school directors"). Thus, this avenue of establishing School District liability for Kimber's and Bankus's alleged constitutional violations is also unavailable to Phillis.

District Court's conclusion that Phillis established her *prima facie* case, we proceed directly to analyze the District's articulated reasons for taking the relevant adverse employment actions—placing Phillis on an ITIP in October 2005, and recommending her termination in August 2006—and whether Phillis has succeeded in showing a disputed material fact as to whether those reasons were pretextual.

Regarding the ITIP, Bankus testified that the Plan was imposed primarily based on the complaints about Phillis that arose the previous school year, as well as a handful of incidents that occurred in September or early October 2005. Phillis posits that the previous year's incidents were no longer fair game because they had been included in the procedurally unsound unsatisfactory evaluation, yet she points to nothing that supports that position. Further, while Phillis states in her unsworn declaration that at least one of the relevant incidents did not occur,[9] she does not deny others. Thus, we see no basis to disturb the District Court's conclusion that Phillis failed to show a genuine issue of material fact whether the School District's stated reasons for placing her on the ITIP were pretextual.

Likewise, the School District has satisfied its burden by giving two general reasons for terminating Phillis: that she failed to follow her supervisors' instructions (including those contained in her ITIPs), and the two discrepancies in Phillis's job application. Starting with the School District's second reason, we agree that Phillis has shown that there is at least a dispute of fact whether it had actual or constructive

---

[9] Specifically, Phillis denies that she told students that she had sent pictures of herself, wearing a bikini, to another teacher.

knowledge of her DUI conviction much earlier than 2006. As Phillis points out, she had submitted to the School District forms containing information about her conviction during a licensing proceeding that took place in 2002, and a reasonable factfinder could infer that School District administrators had reviewed those forms.

However, we are not similarly convinced that, because Phillis's explanation regarding her departure from Mechanicsburg, Pennsylvania School District was technically correct, it could not have been a basis for her dismissal. At minimum, Phillis's statement was misleading—we note that during litigation subsequent to Phillis's departure from the Mechanicsburg School District, a Pennsylvania Court stated that she "received an unsatisfactory rating *and was dismissed.*" *Phillis v. Bd. of Sch. Dirs. of Mechanicsburg Area Sch. Dist.*, 617 A.2d 830, 832 (Pa. Commw. Ct. 1992) (emphasis added).

As to the District's reliance on Phillis's failure to follow supervisory instructions, she asserts broadly that the various infractions that the School District claims she committed during the course of her employment were "resoundingly debunk[ed]" by her declaration. But we have already discussed why that declaration is insufficient to defeat summary judgment. Beyond her general statement, Phillis specifically challenges only the School District's decision to issue her a formal letter of reprimand for failing to post classroom rules in the manner required by school policy and her ITIP. In Phillis's brief in our Court, she labels as "utterly absurd" the contention that she violated this rule by "posting" her class rules horizontally, on a desk, instead of adhering them to a wall or chalkboard. Appellant Br. at 35. However, we deem Phillis's "horizontal posting"

12

argument insufficient to allow a reasonable fact finder to conclude that the School District was acting pretextually.

Accordingly, we see no reason to overturn the District Court's grant of summary judgment on Phillis's retaliation claim.

### III. Conclusion

For the foregoing reasons, we affirm the decision of the District Court.