**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 18-2655

———————————

LINDA SMITH,
Appellant

v.

THE UNIVERSITY OF SCRANTON; BRIAN CONNIFF; CLAYTON
NOTTELMANN

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-16-cv-02430)
District Judge: Honorable A. Richard Caputo

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 22, 2019

Before: SHWARTZ, KRAUSE, and BIBAS, *Circuit Judges*

(Opinion Filed: May 9, 2019)

———————————

OPINION[*]

———————————

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

If an employee asks her employer to accommodate her disability, the employer may not fire her for making that request. But the request does not immunize her from being fired for legitimate reasons.

Linda Smith asked the University of Scranton to accommodate her disabilities. But over the next three years, she kept performing poorly at work. So she was fired. She claims that she was fired not because she was poor at her job, but because she had asked the University to accommodate her. But she raises no genuine issue of retaliation or pretext. So we will affirm.

## I. BACKGROUND

The University hired Smith to work as a receptionist in its Residential Life Office. She had a rough tenure: she received several poor performance reviews and two warnings about the quality of her work.

A few weeks after the second warning, Smith told her supervisor that she was having "trouble with [her] memory" and suffering from "daily headaches." App. 492. So in 2012, she asked for two accommodations under the Americans with Disabilities Act: First, she asked to receive assignments "in writing or email" so that she could have a "hard copy to refer to[ ]." App. 493. Second, she asked that her "job [not be] held over [her] head on [e]very mistake that [she] make[s]." *Id.* The University's Office of Equity and Diversity recommended giving her reasonable accommodations.

Around the same time, Smith complained to that office about her supervisor, Barbara King. She said that King often misattributed errors to her, blew errors out of proportion,

disparaged her appearance, and repeatedly threatened to fire her. The Office agreed, finding that King had harassed Smith and created a hostile work environment.

Soon after, Smith accepted a secretary position in the University's Department of Theology and Religious Studies. This move got her away from King. But her performance remained spotty: She had trouble printing, scanning, and copying documents. She made mistakes filling out expense reports and reimbursements. And she was often inattentive and struggled to manage her time. Because of her mistakes, some members of the Department stopped assigning her work.

So the University fired Smith in 2015. She then sued the University, alleging that it had fired her in retaliation for her 2012 request to accommodate her disabilities. She brought claims under the Americans with Disabilities Act and the Pennsylvania Human Relations Act. She also sued several University employees for aiding and abetting the alleged retaliation.

The District Court granted the defendants summary judgment on all counts. We review its decision de novo. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015). We use the same test to analyze her federal and state claims. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). And the employees can be liable under the Human Relations Act only if the University is. 43 PA. STAT. AND CONS. STAT. ANN. §955(e); *Edmonds v. Corizon Health, Inc.*, No. 742-C.D.-2017, 2018 WL 1513453, at *4 (Pa Commw. Ct. March 28, 2018). So all of Smith's claims rise and fall together.

## II. Smith Has Not Made Out a Prima Facie Case of Retaliation

Smith makes no triable claim that she was fired *because* she asked the University to accommodate her disabilities. So she has not made out a prima facie case of retaliation.

Employers may not punish their employees for asking them to accommodate a disability at work. 42 U.S.C. §12203(a); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003). Here, Smith's disability-retaliation claim rests on a pretext theory, not a mixed-motive theory. So to make out a prima facie case of retaliation, she must make a showing that (1) she engaged in a protected activity, (2) her employer took an adverse action against her, and (3) the protected activity caused the adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (extending the Title VII test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to disability-retaliation claims). If she makes that showing, the burden shifts to the University to offer "a legitimate, non-retaliatory reason" for firing her. *Id.* If it does so, the burden shifts back to Smith to show that the University's explanation is a pretext for retaliating against her. *Id.* at 501.

Smith has established the first two prongs of her prima facie case. She engaged in a protected activity by asking the University to accommodate her disability. And she later suffered an adverse consequence: she was fired. So to complete her prima facie case, Smith must raise a triable claim that her accommodation request caused the University to fire her.

Employees have many ways to make a showing of a causal connection. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). And Smith offers many theories. But at every turn, her arguments fail.

First, employees can show causation if they suffered an adverse consequence *soon after* asking for an accommodation. *See, e.g.*, *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two-day gap proves causation). But here, almost three years passed between Smith's request and her firing. This is not close enough in time to suggest causation.

Second, an employer's *inconsistent justifications* for taking an adverse action can suggest causation. *Carvalho-Grevious*, 851 F.3d at 260. But University officials consistently said they had fired Smith because she performed poorly at her job. And years of bad performance reviews and workplace errors confirm that explanation.

Third, an employee may invoke an employer's *discussion of an accommodation when taking an adverse action* as evidence of retaliation. *Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005). Smith argues that when she was fired, the director of human resources discussed her request for an accommodation. But the record does not support this claim. Smith never testified that the director mentioned her accommodation request. Instead, she said that when the director fired her, he referred to her work with Barbara King as "below standard." App. 95. This statement supports the opposite conclusion: that Smith was fired not because she had asked for an accommodation, but because she had performed poorly for years. And employers are free to discuss events that occurred around the time of the accommodation request; the request does not put years of work history off-limits.

Fourth, a *pattern of antagonism* can also reveal retaliation. *Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 895 (3d Cir. 1993). To advance this theory, Smith points to the Office of Equity and Diversity's finding that King had harassed Smith and created a hostile work environment. But King stopped supervising Smith years before she

was fired. And as the District Court rightly noted, the University was generally lenient with Smith, not hostile to her. Despite her poor performance, Smith was transferred to another department, offered a permanent job, and took part in many training programs. Smith also argues that the director of human resources antagonized her after her request. Once again, the evidence shows the opposite: he encouraged her to speak with him and gave her resources to help solve her workplace problems.

Finally, an employer's *treatment of other employees* can show a culture of retaliation. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1086 (3d Cir. 1996). Smith raises this theory but again fails to support it. She points to one other employee: the former director of the Office of Equity and Diversity. But she offers only that director's civil complaint against the University, which alleges that she also suffered retaliation. But unsubstantiated allegations in a complaint are not enough to show a culture of retaliation.

At root, Smith's causal theories all fail because she gave the University ample reason to fire her in the years after she asked it to accommodate her disabilities. She made many mistakes and failed to improve. She cost the University money and left members of the Theology Department without reliable support. Her years of poor performance, not her accommodation request, caused the University to fire her. So Smith has not made out a prima facie case of retaliation.

### III. SMITH HAS NOT PROVEN THAT THE UNIVERSITY'S JUSTIFICATION WAS A PRETEXT

Even if Smith had raised a genuine dispute about causation and thus made out her prima facie case, her retaliation claim would still fail. The University has given a legitimate, non-

retaliatory reason for firing her: she performed poorly at her job. Smith must raise a triable claim that this reason is a pretext for retaliation.

But she does not identify any "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in the University's stated reason. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). Instead, she claims that the Theology Department's previous secretary was not fired even though she too performed poorly. But that secretary's allegedly poor performance does not immunize Smith from being fired for hers. She also claims, against all the evidence, that she "performed her duties well in the Theology Department, with little mistakes." Smith Br. 19. We do not weigh the wisdom of the University's evaluations or employment decisions, but scrutinize only their believability. *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997). To prevail, Smith must raise a genuine dispute about whether the University's decision was a cover for retaliation. She cannot.

\* \* \* \* \*

We do not question Smith's sincere feeling that she has been wronged. But the evidence does not show that. She has not made a triable claim that the University retaliated against her for asking for a disability accommodation. So we will affirm the grant of summary judgment for the University. And under Pennsylvania law, individuals cannot aid or abet a non-existent Human Rights Act violation. So we will also affirm the grant of summary judgment for the individual defendants.